IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 22-cv-2839-WJM-JPO

NORTHMARQ FINANCE, LLC, a Nebraska limited liability company,

    Plaintiff,

v.

FIDELITY NATIONAL TITLE INSURANCE COMPANY, a Florida company,

    Defendant.

## ORDER GRANTING DEFENDANT FIDELITY NATIONAL TITLE INSURANCE COMPANY'S EARLY MOTION FOR PARTIAL SUMMARY JUDGMENT

This matter arises out of Plaintiff NorthMarq Finance, LLC's claim for benefits under a title insurance policy issued by Defendant Fidelity National Title Insurance Company in connection with a construction project for which NorthMarq was the lender. After a dispute between the general contractor and the owner regarding payment, the general contractor terminated the contract. Later, the general contractor and several subcontractors recorded mechanics' liens on the property and filed suits to foreclose on those liens. NorthMarq submitted to Fidelity a claim for defense and indemnity arising out of the mechanics' lien suits, but Fidelity denied the claim.

Before the Court is Fidelity's Early Motion for Partial Summary Judgment ("Motion"). (ECF No. 48.) NorthMarq filed a response in opposition. (ECF No. 84.) Fidelity filed a reply. (ECF No. 90.) For the following reasons, the Motion is granted.

### I. STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the

movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). An issue is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## II. MATERIAL FACTS[1]

### A. The Construction Project

The U.S. Department of Housing and Urban Development ("HUD") provides mortgage insurance to lenders to encourage production of multifamily and senior living facilities. By insuring lenders against loss for a loan default, HUD gives greater access to financing options. According to NorthMarq, HUD requires the insured mortgage have priority over any other lien or encumbrance at initial endorsement (construction loan

---

[1] The following factual summary is based on the parties' briefs on the Motion and documents submitted in support thereof. These facts are undisputed unless attributed to a party or source. All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

closing), during the construction phase, and at final endorsement.  (ECF No. 84 at 5 ¶ 18.)  NorthMarq explains that the contractual requirements relating to mechanics' liens result in relatively low risk that mechanics' liens will take priority over the insured mortgage.  (*Id.* ¶ 20.)

NorthMarq loaned Ken Caryl Senior Living, LLC ("KCSL") $25.9 million to construct a senior living community (the "Project") at 7711 Shaffer Parkway, Littleton, Colorado ("Property").  Fidelity issued to NorthMarq and HUD a Loan Policy of Title Insurance No. CO-FSTG-IMP-27307-1-16-F0549502 ("Policy"), with a Date of Policy of July 31, 2017.  (ECF No. 48-1.)  The Policy is an "ALTA Loan Policy (6/17/06)," a standard form policy promulgated by the American Land Title Association ("ALTA"), which the parties modified by several endorsements attached to and made part of the Policy.

KCSL defaulted on the loan from NorthMarq.  Beginning in March 2020, several subcontractors and the general contractor, Petra, recorded mechanics' liens against the Property ("Mechanics' Liens").  After the liens were recorded, four subcontractors filed lien foreclosure actions, each asserting priority of its mechanic's lien over all other liens on the Property.  In its responsive pleading to each of these actions, Petra asserted cross claims—filed on November 13, 2020, November 16, 2020, and November 18, 2020—asserting priority over all other liens on the Property (together with the subcontractors' actions, "Lien Suits").

On September 16, 2020, after receiving notice of the Mechanics' Liens and the Lien Suits, NorthMarq tendered a claim for a defense and indemnification to Fidelity under the Policy against the Lien Suits ("Claim").  On October 20, 2020 Fidelity denied

3

NorthMarq's Claim.  (ECF No. 22 ¶ 52.)

**B.     Relevant Policy Provisions**

    1.     <u>Covered Risks 10, 11, 12</u>

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B, AND THE CONDITIONS, FIDELITY NATIONAL TITLE INSURANCE COMPANY, a California Corporation (the "Company") insures as of Date of Policy and, to the extent stated in Covered Risks 11, 13, and 14, after Date of Policy, against loss or damage, not exceeding the Amount of Insurance, sustained or incurred by the Insured by reason of:

. . .

    10. The lack of priority of the lien of the Insured Mortgage upon the Title over any other lien or encumbrance.

    11. The lack of priority of the lien of the Insured Mortgage upon the Title

    (a) as security for each and every advance of proceeds of the loan secured by the Insured Mortgage over any statutory lien for services, labor or material arising from construction of an improvement or work related to the Land when the improvement or work is either

        (i) contracted for or commenced on or before Date of Policy; or

        (ii) contracted for, commenced or continued after Date of Policy if the construction is financed, in whole or in part, by proceeds of the loan secured by the Insured Mortgage that the Insured has advanced or is obligated on the Date of Policy to advance; and

    (b) over the lien of any assessments for street improvements under construction or completed at Date of Policy.

    12. The invalidity or unenforceability of any assignment of the Insured Mortgage, provided the assignment is shown in Schedule A, or the failure of the assignment shown in Schedule A to vest title to the Insured Mortgage in the named Insured assignee free and clear of all liens.

4

. . .

(ECF No. 48-1 at 2–3.)

    2.    <u>Exclusion 3(d)</u>

    The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

    . . .

    3.    Defects, liens, encumbrances, adverse claims, or other matters

    . . .

    (d)    attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 13, or 14)
. . .

(ECF No. 48-1 at 5.)

    3.    <u>Endorsements</u>

    a.    *ALTA 32.1-06*

ALTA 32.1-06 Construction Loan – Loss of Priority – Direct Payment Endorsement ("Endorsement") provides that "Covered Risk 11(a) of this policy is deleted." (ECF No. 48-1 at 34.)

Section 3 provides certain mechanics' lien coverage: "The Company insures against loss or damage sustained by the Insured by reason of: . . . [t]he lack of priority of the lien of the Insured Mortgage as security for each Construction Loan Advance made on or before the Date of Coverage over any Mechanic's Lien . . . .". (*Id.*)

Section 4 provides: "This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) by reason of any Mechanic's

5

Lien arising from services, labor, material or equipment: (a) furnished after Date of Coverage[.]"  (*Id.*)

The Endorsement also states:

> This endorsement is issued as part of the policy.  Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance.  To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls.  Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

(*Id.* at 35.)

      b.    *ALTA 33-06*

The Policy also includes endorsement ALTA 33-06 Disbursement Endorsement ("ALTA 33"); with each disbursement, another ALTA 33 endorsement is issued.  (*Id*. at 36.)  The final ALTA 33 endorsement issued provides the Date of Coverage was amended from July 17, 2019, to November 18, 2019, with a current disbursement of $1,562,996.94 and total aggregate amount disbursed by NorthMarq of $17,345,524.12.[2]

    4.    <u>Merger Clause</u>

The Conditions portion of the Policy contains the following merger clause:

> 14.    **LIABILITY LIMITED TO THIS POLICY; POLICY ENTIRE CONTRACT**
> (a) This policy together with all endorsements, if any, attached to it by the Company is the entire policy and contract between the Insured and the Company.  In interpreting any provision of this policy, this policy shall be

---

[2] This statement of fact cites Exhibit L, 2.  The Court reviewed Exhibit L, which does not appear to demonstrate the amendments to the dates of coverage.  Nevertheless, NorthMarq admits paragraph 16 and states in its response that Fidelity's issuance of the final ALTA 33 modified the Date of Coverage from July 17, 2019 to November 18, 2019.  (ECF No. 84 at 5, 14.)  Therefore, the Court finds the dates of coverage stated in the Motion are accurate and relies upon them.

construed as a whole.

(ECF No. 48-1 at 8.)

### III. PROCEDURAL HISTORY

NorthMarq filed this action for breach of contract in the District Court of Arapahoe County, Colorado on September 27, 2022.  (ECF No. 1-3.)  Fidelity removed the action on October 28, 2022.  (ECF No. 1.)  About two months later, NorthMarq filed the Amended Complaint ("AC"), bringing three claims for breach of contract–duty to defend, breach of contract–indemnification, and breach of good faith and fair dealing.  (ECF No. 22.)

### IV. LAW

The interpretation of a written contract is generally a question of law.  *Matter of May*, 756 P.2d 362, 369 (Colo. 1988) (en banc).  "Under Colorado law, the purpose of contract interpretation is to ascertain the intent of the parties by ensuring that contracts are construed 'consistently with the well-established principles of interpretation.'"  *Stroh Ranch Dev., LLC v. Cherry Creek S. Metro. Dist. No. 2*, 935 F. Supp. 2d 1052, 1059–60 (D. Colo. 2013) (quoting *East Ridge of Fort Collins, LLC v. Larimer and Weld Irrigation Co.*, 109 P.3d 969, 973 (Colo. 2005)).  As a starting point, courts examine the contractual terms and attempt to determine the parties' intent therein.  *Id.* (citing *Level 3 Commc'ns, LLC v. Liebert Corp.*, 535 F.3d 1146, 1154 (10th Cir. 2008)).

When construing a contract, courts must not "view clauses or phrases in isolation."  *Id.* (quoting *East Ridge*, 109 P.3d at 974–75).  This principle guards against a reading of the contract that would yield an absurd result—and run inconsistent with the purpose of the contract.  *Id.* (citation omitted).  Courts must examine the contract as

a whole and attempt to determine the intent by reference to all of the contract's terms and provisions.  *Liebert*, 535 F.3d at 1154; *East Ridge*, 109 P.3d at 973.

Whether a written contract is ambiguous is a question of law.  *Id*.  When a contractual term "unambiguously resolves the parties' dispute, the interpreting court's task is over" because "in the absence of an ambiguity a written contract cannot be varied by extrinsic evidence."  *Id*.  A contract is ambiguous "if it is fairly susceptible" to more than one interpretation.  *Id*.  In determining whether an ambiguity exists, the "language of the agreement must be construed by application of the accepted meaning of the words with all reference to its provisions," and the "nature of the transaction which forms the contract subject matter must also be considered."  *In re Marriage of Thomason*, 802 P.2d 1189, 1190 (Colo. App. 1990).

## V. ANALYSIS

NorthMarq asserts its breach of contract claims based on allegations that the Lien Suits, and any ensuing losses, fell within the coverage granted in Covered Risks 10, 11, 12, and the Endorsement.  (ECF No. 22, ¶¶ 28–37.)  However, Fidelity argues that the Court should conclude that the Policy does not provide NorthMarq with coverage under Covered Risks 10, 11, and 12.[3]  (ECF No. 48.)  For the following reasons, the Court agrees with Fidelity that these provisions do not provide NorthMarq with coverage.

**A.     Covered Risk 11**

Pursuant to the Endorsement, Covered Risk 11(a) was deleted from the Policy.

---

[3] Although Fidelity does not concede that there is coverage under the Endorsement, it does not seek summary judgment on that basis in the Motion.  (ECF No. 48 at 7 n.2.)

(ECF No. 48-1 at 34.)  In its response, NorthMarq does not dispute Fidelity's assertion that Covered Risk 11(b) does not apply and, in general, NorthMarq does not meaningfully address coverage under Covered Risk 11.[4]  (ECF No. 60 at 4 n.1; *see also* ECF No. 84 at 14, 21 (omitting Covered Risk 11 from list of sources of coverage).)  Rather, NorthMarq's arguments concern whether Covered Risks 10 and 12 apply.  Given the foregoing, the Court finds that Fidelity is entitled to judgment in its favor on NorthMarq's breach of contract claims to the extent they are based on Covered Risk 11.

**B.    Covered Risks 10 and 12**

NorthMarq also argues that coverage exists under Covered Risks 10 and 12.  The Court disagrees.  The Policy insures Covered Risks 10 and 12 "as of Date of Policy," which is July 31, 2017.  (ECF No. 48-1 at 2.)  Exclusion 3(d) excludes from coverage "loss or damage, costs, attorneys' fees, or expenses" arising because of defects, liens, encumbrances, adverse claims, or other matters "attaching or created subsequent to Date of Policy" and specifies that the exclusion does not modify coverage provided under Covered Risk 11, 13, or 14.  (*Id.* at 5.)  By specifying in Exclusion 3(d) which Covered Risks are *not* modified, the Policy makes clear that any Covered Risk not enumerated *is* modified by Exclusion 3(d); this includes Covered Risks 10 and 12.

The parties deleted Covered Risk 11(a) and replaced it with the Endorsement, which even Fidelity agrees provides at least some post-policy mechanics' lien coverage.  (ECF No. 48 at 12; ECF No. 48-1 at 34–35.)  The Endorsement provides that it does not modify any of the terms and provisions of the Policy or extend the Date of Policy, and to

---

[4] Covered Risk 11(b), the only part of Covered Risk 11 remaining after the issuance of the Endorsement, insures against the lack of priority of the lien of the Insured Mortgage upon the Title over liens of assessments for street improvements; this is not an issue in this case.

the extent a Policy provision or other endorsement is inconsistent with an express provision of the Endorsement, "this endorsement controls." (ECF No. 48-1 at 35.; *see Blackhawk-Cent. City Sanitation Dist. v. Am. Guarantee & Liab. Ins. Co.*, 214 F.3d 1183, 1190 (10th Cir. 2000) ("The general rule provides that when a conflict in an insurance contract arises between provisions contained in the body of the policy and provisions contained in an endorsement to that policy, the endorsement provisions prevail." (quoting *Simon v. Shelter Gen. Ins. Co.*, 842 P.2d 236, 241 (Colo. 1992)).)

The Court finds Fidelity's reliance on a Fifth Circuit Court of Appeals opinion highly persuasive. (*See* ECF No. 48 at 12.) In *Hall CA-NV, L.L.C. v. Old Republic National Title Insurance Company*, the parties entered into a title insurance agreement and agreed to remove the standard ALTA form's Covered Risk 11(a). 990 F.3d 933, 935 (5th Cir. 2021). After the construction project encountered difficulties, the general contractor filed and began foreclosing on mechanics liens. *Id.* The plaintiff argued that the lien losses were insured under Covered Risks 2 and 10, which provided that the defendant "insures as of Date of Policy" against losses "sustained or incurred . . . by reason of . . . [a]ny defect in or lien or encumbrance on the Title" or "[t]he lack of priority of the lien of the Insured Mortgage upon the Title over any other lien or encumbrance." *Id.* at 936 (alterations in original). In affirming the district court's grant of summary judgment in favor of the title insurer, the Fifth Circuit concluded:

> any doubt about whether Covered Risks 2 and 10 could possibly be read to cover the [general contractor] lien losses at issue here is removed by the fact that the parties also signed standard ALTA Form 32-06. In so doing, the parties specifically contracted to eliminate one coverage provision of the standard-form insurance policy—Covered Risk 11(a). As noted, that provision usually protects the insured against any loss incurred as a result of "[t]he lack of priority of the lien of

> the Insured Mortgage . . . over any statutory lien for services, labor, or material arising from construction of an improvement or work related to the Land when the improvement or work is . . . contracted for or commenced on or before Date of Policy."
>
> In other words, the parties took a standard-form ALTA contract and used a standard-form addendum to specifically remove the provision that would have unquestionably provided Hall coverage in this exact scenario.  This fact alone should doom Hall's claim that the remaining provisions of the insurance policies somehow cover the [general contractor] lien losses.  As Old Republic points out, reading Covered Risks 2 and 10 to cover a loss specifically covered by the (removed) Covered Risk 11(a) would render Covered Risk 11(a) in the standard-form ALTA contract surplusage.

*Id.* at 936–37.

As in *Hall*, to adopt NorthMarq's interpretation of the contract and find coverage under Covered Risks 10 and 12 would render the parties' decision to delete Covered Risk 11(a) and agree to the Endorsement meaningless.  Such a finding would contravene Colorado law, which requires the Court to read an insurance policy as a whole and construe the policy to harmonize all provisions and render none meaningless.  *Godin & Baity*, 2020 WL 5076764, at *6 (D. Colo. Aug. 27, 2020) ("The Court must interpret the Policy 'in its entirety with the end in view of seeking to harmonize and to give effect to all provisions so that none will be rendered meaningless.'" (quoting *Copper Mountain, Inc. v. Indus. Sys., Inc.*, 208 P.3d 692, 697 (Colo. 2009))).

The Court briefly examines a couple of NorthMarq's arguments asserting that ambiguity exists.  For the following reasons, it finds they are without merit.  First, NorthMarq argues that because the introductory words in Section 4 of the Endorsement say "This policy," "Fidelity extended the time period of coverage under 'this Policy,' not

11

merely the Endorsement." (ECF No. 84 at 13–14.)  Not so.  Covered Risks 10 and 12 are tied to the Date of Policy, not the Date of Coverage.  (ECF No. 48-1 at 2–4.)  And, while Section 4 undisputedly uses the phrase "this policy," the Endorsement provides that it does not modify any of the terms and provisions of the Policy and controls to the extent it is inconsistent with another provision of the Policy.  (*Id.* at 35.)  Further, the ALTA 33 Endorsements did not modify the Date of Policy, merely the Date of Coverage, and therefore, they do not affect the period covered by Covered Risks 10 and 12.

Additionally, NorthMarq argues that Exclusion 3(d) and the Endorsement are inconsistent because Exclusion 3(d) excludes coverage for mechanics' liens attaching after the Date of Policy, while the Endorsement provides coverage for such mechanics' liens.  (ECF No. 84 at 14.)  NorthMarq highlights language in Section 2 that states that "[t]he insurance . . . added by Section 3 of this endorsement is subject to the exclusions in Section 4 of this endorsement and the Exclusions from Coverage in the Policy, the provisions of the Conditions, and the exceptions contained in Schedule B." (ECF No. 48-1 at 34.)  According to NorthMarq, "by its terms, the prospective coverage Fidelity contends is offered only by the Endorsement would be completely eliminated by Exclusion 3(d), resulting in unenforceable illusory coverage." (*Id.*)  Again, NorthMarq misreads the last paragraph of the Endorsement, which provides that to the extent a provision of the Policy "is inconsistent with an express provision of this endorsement, this endorsement controls." (ECF No. 48-1 at 35.)  No ambiguity or conflict exist.

NorthMarq does not dispute that the Mechanics' Liens were recorded and the Lien Suits filed after the Date of Policy. (ECF No. 48 at 3 ¶¶ 2, 6–7; ECF No. 84 at 4 ¶¶ 2, 6–7.)  Therefore, any potential coverage available under the Policy for the Claim may

12

be found only under the Endorsement.[5]

## VI. CONCLUSION

For the reasons explained above, the Court ORDERS that:

1. Fidelity's Early Motion for Partial Summary Judgment (ECF No. 48) is GRANTED; and

2. NorthMarq's breach of contract claims are DISMISSED WITH PREJUDICE to the extent they are predicated on the existence of coverage under Covered Risks 10, 11, and 12 of the Policy.

Dated this 6th day of May, 2024.

BY THE COURT:

_____
William J. Martinez
Senior United States District Judge

---

[5] Because the Court's ruling here relies solely on the plain language of the Policy, it does not examine NorthMarq's arguments concerning extrinsic evidence and the reasonable expectations doctrine.