IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 22-cv-2839-WJM-TPO

NORTHMARQ FINANCE, LLC, a Nebraska limited liability company,

    Plaintiff,

v.

FIDELITY NATIONAL TITLE INSURANCE COMPANY, a Florida company,

    Defendant.

---

**ORDER RESOLVING PLAINTIFF
NORTHMARQ FINANCE LLC'S RULE 702 MOTIONS**

---

Before the Court are Plaintiff NorthMarq Finance, LLC's ("NorthMarq") Rule 702 Motions to Exclude the Opinions and Testimony of J. Bushnell Nielsen (ECF No. 194) and Gregory T. Gerken, MAI, AI-GRS (ECF No. 195) ("Motion," or "Motions"). Defendant Fidelity National Title Insurance Company ("Fidelity") filed a response to each Motion (ECF Nos. 205, 206), to which NorthMarq filed a reply (ECF Nos. 209, 210).[1]

For the following reasons, the Motion as to Nielsen is granted in part and denied in part, and the Motion as to Gerken is denied.

## I. LEGAL STANDARD

Federal Rule of Evidence 702 "imposes on a district court a gatekeeper

---

[1] NorthMarq also moved to exclude the opinions and testimony of Maureen Dunn. (ECF No. 195.) In its response, Fidelity states that "it [is] withdrawing Ms. Dunn as an expert" and "will not proffer her as an expert at trial." (ECF No. 204.) The Motion as to Dunn is accordingly denied as moot.

obligation to 'ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.'" *Dodge v. Cotter Corp.,* 328 F.3d 1212, 1221 (10th Cir. 2003) (quoting *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 589 (1993)); *see also United States v. Duran,* 941 F.3d 435, 452 (10th Cir. 2019) ("The district court must act as a gatekeeper, ensuring that the proffered opinions rest on a reliable foundation and are relevant to the issues."). The proponent of the expert must demonstrate by a preponderance of the evidence that the expert's testimony and opinion are admissible. *U.S. v. Nacchio,* 555 F.3d 1234, 1241 (10th Cir. 2009).

> Rule 702 provides:
>
> > A witness who is qualified as an expert by knowledge, skill, experience, or education may testify in the form of an opinion or otherwise if:
> >
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> >
> > (b) the testimony is based on sufficient facts or data;
> >
> > (c) the testimony is the product of reliable principles and methods; and
> >
> > (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Civ. P. 702.

"In evaluating the admissibility of expert testimony, 'the district court must satisfy itself that the proposed expert testimony is both reliable and relevant, in that it will assist the trier of fact, before permitting a jury to assess such testimony.'" *Schulenberg v. BNSF Ry. Co.,* 911 F.3d 1276, 1282 (10th Cir. 2018) (quoting *Nacchio,* 555 F.3d at 1241). Thus, the Court must make multiple determinations.

"First, the district court must 'determine whether the expert is qualified 'by

knowledge, skill, experience, training, or education' to render an opinion.'" *Schulenberg,* 911 F.3d at 1282 (quoting *Nacchio,* 555 F.3d at 1241; Fed. R. Evid. 702).

"Second, if the expert is sufficiently qualified, the Court must determine whether the proposed testimony is sufficiently 'relevant to the task at hand,' such that it 'logically advances a material aspect of the case.'" *Bethel v. Berkshire Hathaway Homestate Ins. Co.,* 596 F. Supp. 3d 1260, 1265–66 (D. Colo. 2022) (quoting *Norris v. Baxter Healthcare Corp.,* 397 F.3d 878, 884, 884 n.2 (10th Cir. 2005)). "Doubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility unless there are strong factors such as time or surprise favoring exclusions." *Robinson v. Mo. Pac. R.R. Co.,* 16 F.3d 1083, 1090 (10th Cir. 1994) (quotation omitted).

Finally, "the district court 'must determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology.'" *Schulenberg,* 911 F.3d at 1283 (quoting *Nacchio,* 555 F.3d at 1241). In determining reliability, a district court must decide "whether the reasoning or methodology underlying the testimony is scientifically valid." *Norris,* 397 F.3d at 884, 884 n.2 (quoting *Daubert,* 509 U.S. at 592–93). A court may consider, nonexhaustively: "(1) whether a theory has been or can be tested or falsified, (2) whether the theory or technique has been subject to peer review and publication, (3) whether there are known or potential rates of error with regard to specific techniques, and (4) whether the theory or general approach has general acceptance." *Norris,* 397 F.3d at 884 (citing *Daubert,* 509 U.S. at 593–94). "Importantly, the court is not required 'to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.'"

3

*Schulenberg,* 911 F.3d at 1283 (quoting *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997)).

## II. ANALYSIS[2]

Neither party has requested an evidentiary hearing on the Motions, and the Court finds that it does not need one to resolve them.  See *Nacchio,* 555 F.3d at 1251 ("Tenth Circuit case law does not mandate that a [*Daubert*] hearing be held").  The Court otherwise presumes the parties' familiarity with the facts and procedural history of this case from, among other sources, the Court's summary judgment orders (ECF Nos. 147, 193) and thus proceeds directly to its analysis.

**A.    J. Bushnell Nielsen**

Nielsen is an attorney licensed to practice in Wisconsin with "work experience as a construction disburser, escrow officer, title officer, underwriting counsel and claims counsel."  (ECF No. 194-4 at 19:8–13; ECF No. 194-1 at 3.)  He is the author of a treatise, *Title and Escrow Claims Guide,* which he describes as a "distill[ation of] the customs and practices employed by escrow officers and title insurance claims counsel" that "reflects the customs employed by all or most title insurers in the United States." (ECF No. 194-1 at 3.)  "Fidelity retained Nielsen to 'evaluate and opine on the customs and practices of construction disbursers, escrow officers, title officers and claim administrators in the title insurance and escrow businesses' . . . and rebut certain opinions offered by three of NorthMarq's proposed experts, Damian Arguello, Marie Head, and Daniel Hawes."  (ECF No. 205 at 2 (quoting ECF No. 194-1 at 3).)

---

[2] With the exception of citations to deposition transcripts, all citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

4

NorthMarq seeks to exclude a substantial portion of the opinions set forth in Nielsen's initial report (ECF No. 194-1), rebuttal report (ECF No. 194-2), and supplemental report (ECF No. 194-3).  It sorts those challenged opinions into four categories of asserted inadmissibility: (1) "legal conclusions and analysis"; (2) "[i]rrelevant opinions"; (3) "[o]pinions regarding NorthMarq's (and others') motives, intentions, or state of mind"; and (4) "[s]peculative opinions" regarding what NorthMarq could have done to better mitigate its losses.  (ECF No. 194 at 3.)

The specific opinions and testimony NorthMarq seeks to exclude are numerous, and the Court will not rule on the admissibility of each and every identified excerpt.  Instead, it sets forth below general parameters for the admissibility of Nielsen's opinions and testimony, which it will apply on an objection-by-objection basis at trial.

1.   Legal Conclusions and Analysis

NorthMarq first seeks to exclude certain of Nielsen's opinions it says consist of inadmissible "[l]egal conclusions, including interpretations of the Policy, statements of applicable law, and legal conclusions and analysis couched as 'title insurance industry custom.'"  (*Id.*)

"An expert's opinion is not inadmissible simply because it embraces an ultimate issue to be determined by the trier of fact." *O'Sullivan v. Geico Casualty Co.,* 233 F. Supp. 3d 917, 928 (D. Colo. 2017) (citing Fed. R. Civ. P. 704(a)).  Still, "[t]o be admissible, an expert's testimony must be helpful to the trier of fact." *U.S. v. Richter,* 796 F.3d 1173, 1195 (10th Cir. 2015) (citing Fed. R. Evid. 702).  Thus, "an expert may not simply tell the jury what result it should reach without providing any explanation of the criteria on which that opinion is based or any means by which the jury can exercise independent judgment." *U.S. v. Dazey,* 403 F.3d 1147, 1171 (10th Cir. 2005).

5

"The line between a permissible opinion on an ultimate issue and an impermissible legal conclusion is not always easy to discern." *Richter,* 796 F.3d at 1195 (quoting *United States v. McIver,* 470 F.3d 550, 562 (4th Cir. 2006)). However, that line has been fairly well-defined in bad-faith insurance cases like this one, where the reasonableness of the insurer's conduct is at issue. *See Goodson v. Am. Standard Ins. Co. of Wisconsin,* 89 P.3d 409, 415 (Colo. 2004) (reasonableness of an insurer's conduct is "determined objectively, based on proof of industry standards"). In general, an expert "may testify as to insurance industry standards and what [the insurer] did in this case," but he "may not opine as to whether [the insurer's] conduct was reasonable as a matter of law because that is a decision that falls within the province of the jury." *Bethel,* 596 F. Supp. 3d at 1269; *see also Stoker v. State Farm Mut. Auto. Ins. Co.,* 2021 WL 4201583, at *6 (D. Colo. May 6, 2021) (holding attorney-expert "may testify as to insurance industry standards, and may testify [as to] State Farm's compliance with those standards," but "he may not direct the jury's understanding of the applicable legal rights and obligations of the parties"); *Girard Offices, LLC v. Am. Zurich Ins. Co.,* 2022 WL 4467240, at *3 (D. Colo. Sept. 26, 2022) ("an expert may not opine whether a party met its duties under applicable caselaw or violated various statutes" though "[h]e may . . . testify whether, in his opinion, a party's conduct conformed with specific industry standards . . . .").

NorthMarq acknowledges that "*some* of Nielsen's opinions *are* opinions about industry standards" and, in so doing, presumably agrees those opinions are admissible. (ECF No. 209 at 2 (emphasis in original).) But it argues that Nielsen presents still other opinions "under the guise of 'industry standard,'" though they "wade[] far beyond the

6

limits of expert testimony to offer opinions that are legal conclusions, purport to interpret the language of the Policy . . . , and tell the Court which law should apply." (ECF No. 194 at 4; *see also id.* at 6 (arguing that Nielsen's opinions are "littered with legal conclusions, citations to case law, and references to his own treatise, which itself incorporates case law and additional legal analysis").)

Rule 702 does not permit an expert to "attempt to define the legal parameters within which the jury must exercise its fact-finding function" or "interfere[] with the function of the judge in instructing the jury on the law." *Specht v. Jensen,* 853 F. 2d 805, 809–10 (10th Cir. 1988); *Dazey,* 403 F.3d at 1171. Similarly, particularly absent ambiguity, "contract interpretation is not a proper subject for expert testimony." *Bethel,* 596 F. Supp. 3d at 1267; *see also Box Elder Kids, LLC v. Anadarko E & P Onshore, LLC,* 2024 WL 3950929, at *7 (D. Colo. Aug. 27, 2024) (holding that expert opinions "which are effectively tantamount to contract interpretation[] are inadmissible and will not be permitted"); *Girard Offices,* 2022 WL 4467240, at *4 (finding, where "the Court has interpreted the policy and found that the Remodeler Coverage valuation applies," expert "testimony about any industry norms that would warrant a different result is unhelpful to the jury because interpretation of the policy is a matter of law for the Court to decide").

Nevertheless, an expert "may refer to the law in expressing an opinion without that reference rendering the testimony inadmissible" *per se. Specht,* 853 F. 2d at 809. Judges in this District have held that "referencing industry standards—some of which are derived from case law—does not constitute improper legal-conclusion testimony." *Bethel,* 596 F. Supp. 3d at 1268. Indeed, even NorthMarq's competing expert

7

acknowledges that "[a] discussion of legal authorities is . . . unavoidable in any discussion of claim handling standards because insurance companies are expected to comply with the law and internal claim handling guidelines and standards expressly require claims personnel to comply with applicable state and federal law." (ECF No. 198-1 at 63.)

Applying these principles, the Court is wary of the fact that Nielsen's report does not rely exclusively on "Colorado law to outline industry standard." *Bethel,* 596 F. Supp. 3d at 1268. Rather, Nielsen summarizes and analyzes ample out-of-jurisdiction authority (*see, e.g.,* ECF No. 194-1 at 43 (citing Massachusetts and Pennsylvania caselaw)), which poses a substantial risk of confusing the jury as to the law it should apply in rendering a verdict in this case. *See also* Fed. R. Evid. 403; *Girard Offices,* 2022 WL 4664720, at *3 ("An expert may testify as to insurance industry standards codified *in Colorado* and ones that are generally accepted within *the Colorado insurance industry*." (emphasis added)). Accordingly, the Court will permit Nielsen to testify *in broad terms* about *his understanding* of the law as it applies to industry standards. He will not, however, be permitted to testify at length as to the meaning or contents of the multitude of legal sources cited in his report, nor "apply legal standards from caselaw or statutes to state an opinion that [an insurer's] conduct actually violated [or not] caselaw or statutes." *Girard Offices,* 2022 WL 4467240, at *3.

With regard to the Policy, Nielsen may "offer factual statements about language that is included in the Policy," generally "discuss the language contained in the Policy," and testify as to what, individual, discrete terms mean to someone in the industry, to the extent such testimony would assist the trier of fact. *Bethel,* 596 F. Supp. 3d at 1267.

But he may not interpret the contract, "opine on what the 'correct,' 'incorrect,' or 'reasonable' interpretation of a contract provision is," nor testify to the legal effect of a broader clause or provision of the Policy. *Box Elder Kids,* 2024 WL 3950929, at *6.

In accordance with the foregoing parameters, which counsel for both parties are expected to strictly apply at trial, the Motion is granted in part and denied in part with respect to NorthMarq's argument that Nielsen should be precluded from offering opinions in the form of legal conclusions or analysis.

2. <u>Irrelevant Opinions</u>

NorthMarq secondly argues that "[c]ertain of Nielsen's opinions should be excluded because they are irrelevant—either because they do not 'fit' the facts of the case, concern matters not at issue in this case, or contradict Colorado law or this Court's Order (and are also, therefore, moot)." (ECF No. 194 at 7.)

As set forth above, "the relevance prong of the *Daubert* analysis" requires the Court to "ensure that the proposed expert testimony logically advances a material aspect of the case." *Norris,* 397 F.3d 878 at 884, 884 n.2 (quoting *Daubert,* 43 F.3d at 1315). "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "The Supreme Court has described the consideration of relevant evidence as one of 'fit.'" *Bitler v. A.O. Smith Corp.,* 400 F.3d 1227, 1234 (10th Cir. 2005) (quoting *Daubert,* 509 U.S. at 591). "A trial court must look at the logical relationship between the evidence proffered and the material issue that evidence is supposed to support to determine if it advances the purpose of aiding the trier of fact." *Bitler,* 400 F.3d at 1234. "Even if an expert's proffered evidence is scientifically valid and follows appropriate methodologies, it might not have sufficient

9

bearing on the issue at hand to warrant a determination that it has a relevant 'fit.'" *Id.*

NorthMarq first takes issue with Nielsen's various opinions about the underwriting of mechanic's lien coverage in this case," including whether "Fidelity's underwriting of the mechanic's lien risk was reasonable and customary." (ECF No. 194 at 8 (citing ECF No. 194-1 at 44–48).) NorthMarq contends these "opinions are irrelevant" because "[t]here are no claims challenging the reasonableness of underwriting mechanic's lien coverage." (ECF No. 194 at 8.) On this score, however, the Court agrees with Fidelity that NorthMarq's reasonable expectations theory of its breach of contract claim places Fidelity's underwriting decisions at issue. (ECF No. 205 at 7.)

NorthMarq's reasonable expectations theory requires it to "show that, through procedural or substantive deception *attributable to the insurer*, an objectively reasonable insured would have believed he or she possessed coverage later denied by an insurer." *Allen v. United Servs. Auto. Ass'n,* 907 F.3d 1230, 1234 (10th Cir. 2018) (quoting *Bailey v. Lincoln Gen. Ins. Co.*, 255 P.3d 1039, 1054 (Colo. 2011)) (emphasis added). NorthMarq alleges here that it was procedurally deceived into believing it had "full mechanic's lien coverage" because it insisted on such coverage and Fidelity agreed to delete the ML Exception from the Policy, but Fidelity then failed to explain "it was providing only limited and illusory 'misdisbursement' coverage." (ECF No. 148 at 27.) While true that whether Fidelity's underwriting of the Policy was "reasonable and customary" is not an operative legal question remaining for trial *per se*, the Court nonetheless finds that Nielsen's underwriting opinions bear some relevance to whether NorthMarq believed it had "full mechanic's lien coverage" due to procedural deception attributable to Fidelity. *Cf. Stewart Title Ins. Co. v. Credit Suisse,* 2015 WL

10

4250704, at *15 (D. Idaho July 13, 2015) (concluding Nielsen would "be allowed to testify about industry standards and practices concerning underwriting" where the insured's "own experts are making underwriting an issue").

Nevertheless, NorthMarq also argues that Nielsen is unqualified to provide opinions regarding the underwriting of the Policy insofar as he admitted at his deposition "that underwriting and claims administration involve state-specific law" and that "[u]nderwriters affiliate with a local state-based office." (ECF No. 194 at 8 n.4 (citations omitted).) The Court concludes, however, that Nielsen's experience as underwriting counsel sufficiently qualifies to render opinions regarding the underwriting of title insurance policies. NorthMarq may otherwise challenge Nielsen's lack of expertise in Colorado insurance law on cross examination. Accordingly, the Motion is denied to the extent NorthMarq seeks to exclude Nielsen's opinions regarding the underwriting of the Policy.

NorthMarq also argues that "Nielsen intends to offer certain opinions which conflict with Colorado law," including that "under Colorado's 'reasonable expectations' doctrine, a sophisticated party's expectations can only be considered 'reasonable' if they are 'based on some source like publicly available commentary about the endorsement.'" (ECF No. 194 at 8 (quoting ECF No. 194-2 at 14).) As addressed in Section II.A above, Nielsen will not be permitted to instruct the jury on the law—including what the jury must find in order to conclude that NorthMarq's expectations were reasonable—though he may testify to facts from which the jury can infer whether NorthMarq's expectations were reasonable.

Lastly, NorthMarq argues in its reply that Fidelity has conceded the

11

inadmissibility of still other opinions and testimony NorthMarq denoted as irrelevant in the exhibits to the Motion. (ECF No. 209 at 5; *id.* at 5 n.9.) The Court declines to find Fidelity has waived the admissibility of any remaining highlighted excerpts, given that NorthMarq also did not develop any specific argument in the Motion as to why those opinions are now irrelevant. (*See generally* ECF No. 194.) As a general matter, the Court will not permit Nielsen to opine or testify as to issues that the Court has already resolved as a matter of law, though it will consider whether certain issues nonetheless remain relevant to NorthMarq's reasonable expectations theory of its breach of contract claim and/or its common law bad faith claim on an objection-by-objection basis at trial.

The Motion is granted in part and denied in part as to NorthMarq's argument that Nielsen's "irrelevant opinions" should be excluded in accordance with the foregoing parameters.

3.   Speculative Opinions Regarding NorthMarq's Motives or Intent

Next, NorthMarq argues that Nielsen should not be permitted to "offer opinions regarding NorthMarq's motive or intent," including "what NorthMarq (and others) believed and what it knew, and what NorthMarq's own counsel believed or understood." (ECF No. 194 at 9.) The Court agrees.

"To the extent [Nielsen] begins to improperly speculate about [NorthMarq or its agents'] motivations, intent, or state of mind, . . . such speculation is not contemplated by Rule 702 and [will] be excluded." *Turnkey Sols. Corp. v. Hewlett Packard Enter. Co.*, 2018 WL 571877, at *3 (D. Colo. Jan. 26, 2018) (precluding plaintiff's expert from speculation as to defendant's employee's motive or intent); *see also Coomer v. Lindell*, 2024 WL 3989524, at *12 (D. Colo. Aug. 29, 2024) ("Unless a proper foundation can be laid at trial with respect to personal knowledge, [the plaintiff's expert] may not speculate

12

as to [the defendant's] motivations for publishing the allegedly defamatory speech or hiring certain cybersecurity experts.").

On the other hand, Nielsen "can testify about facts and his observations from which the jury can then infer motive or intent." *Turnkey Sols. Corp.,* 2018 WL 571877, at *3 (citing *DePaepe v. Gen. Motors Corp.,* 141 F.3d 715, 720 (7th Cir. 1998) (expert could testify "that reducing the padding saved a particular amount of money . . . [and] that [the manufacturer's] explanation for the decision was not sound; but he could not testify as an expert that [the manufacturer] had a particular motive")); *see also Coomer,* 2024 WL 3989524, at *12 ("the jury may still rely upon [an expert's] to reach inferences about [the defendant's] state of mind"). Moreover, Nielsen may permissibly "explain to the jury the meaning, based on his experience in the industry, of 'technically-worded' communications or documents that the jury will not necessarily understand without his assistance"—though he may not opine as to what the senders or recipients of such communications or documents intended, understood, or believed. *Turnkey Sols. Corp.,* 2018 WL 571877, at *3 (citing *Summit Elec. Supply Co., Inc. v. Int'l Bus. Machines Corp.,* 2010 WL 11414471, at *7 (D.N.M. Sept. 30, 2010) (allowing an expert to testify to the meaning of an e-mail "as it would normally be understood by computer industry professionals" but not regarding "what the particular recipients of the email believed or internalized")).

The Motion is granted to the extent Nielsen will be precluded from opining as to NorthMarq's (or its agents') motives, intent, or state of mind in accordance with the foregoing parameters.

4.  Speculative Opinions Regarding Mitigation of Damages

Lastly, NorthMarq argues that "Nielsen may not offer speculative opinions about

13

what NorthMarq could have done to better mitigate its damages" and that he is, in any case, "unqualified to do so." (ECF No. 194 at 9–10.) NorthMarq specifically refers to Nielsen's "opinions about what NorthMarq *could* have done to clear the mechanic's liens," such as "use the undisbursed $8,000,000 loan balance," and his opinion "that NorthMarq could have better mitigated its loss in paying the general contractor." (ECF No. 194 at 10 (citing ECF No. 194-2 at 55, 76).)

While true "that an expert, no matter how good his credentials, is not permitted to speculate," *Goebel v. Denver & Rio Grande W. R.R. Co.,* 215 F.3d 1083, 1088 (10th Cir. 2000), the Court is unconvinced that is what Nielsen sets out to do here. Given his experience as a construction disburser, the Court is generally comfortable that Nielsen is qualified to testify as to the options available to a lender in NorthMarq's position to clear mechanic's liens filed against the Property. *Contra Jetcraft Corp. v. Flight Safety Intern.,* 16 F.3d 362, 366 (10th Cir. 1993) (affirming district court's decision to prohibit expert from speculating as to what pilot likely "did or didn't do" to cause the accident "given [the expert's] experience"); *Eastridge Development Co. v. Halpert Assocs., Inc.,* 853 F.2d 772, 782–83 (10th Cir. 1988) (affirming district court's decision to sustain objection to expert's testimony as to how settlement payment was allocated where "the parties never designated or reached any understanding as to what portion of the settlement went to which damages" and expert admitted his opinion was "largely subjective"). Of course, NorthMarq is free to challenge Nielsen's qualifications for rendering an opinion regarding NorthMarq's options for mitigating its damages and his justifications for those opinions through cross-examination.

The Motion is thus denied as to Nielsen's purportedly "speculative opinions"

14

relating to NorthMarq's mitigation of its damages.

**B.      Gregory T. Gerken**

Gerken is a licensed Certified General Appraiser in Colorado.  (ECF No. 196-1 at 52.)  He "holds an AI-GRS membership designation from the Appraisal Institute"[3] and has "[o]ver thirty years of experience in appraising numerous commercial, residential, and industrial properties and vacant land."  (ECF No. 196-1 at 52; ECF No. 206 at 2; *id.* at 2 n.2.)

Fidelity states it retained Gerken "as a rebuttal expert for two related, yet distinct purposes: (1) 'review of the Real Estate Appraisal Report' prepared by Plaintiff's appraisal expert; and (2) 'as needed, and if applicable, to opine and report our own current opinion of the 'As Is' Market Value Fee Simple as of our date of inspection (December 8, 2023) and a Retrospective 'As Is' Market Value as of October 14, 2021.'" (ECF No. 206 at 2 (quoting ECF No. 196-1 at 2); ECF No. 196 at 1–2 ("Both Mr. Gerken and Mr. O'Connor offer competing appraisals about the 'as-is' value of the partially-built senior living facility insured by the Policy (the 'Property').").

At issue here is the fact that Gerken relied on data compiled and analysis performed by another professional appraiser and colleague, Michael Martin, who co-signed Gerken's rebuttal report.  (ECF No. 196 at 2; ECF No. 196-1 at 44; ECF No. 206 at 2.)  NorthMarq avers that, during Gerken's deposition, it "learned that Mr. Martin was

---

[3] *See Cook v. Rockwell Intern. Corp.*, 580 F. Supp. 2d 1071, 1134 n.68 (D. Colo. 2006) ("The Appraisal Institute is the non-profit corporation that sets professional standards for real estate appraisers and consultants."); *Appraisal Inst. Prof'l Designations*, APPRAISAL INST., https://www.appraisalinstitute.org/about/our-designations ("The AI-GRS membership designation is held by professionals who provide reviews of appraisals of a wide range of property types, including commercial, industrial, agricultural, residential, and vacant land.") (last visited Sept. 30, 2025.)

15

much more than a co-signatory to the Report, but actually contributed extensively and substantively"—beyond merely "assisting or gathering data."  (ECF No. 196 at 2–3.)  For instance, Martin was responsible for gathering and researching the comparable property sales data upon which Gerken's appraisal opinion using a "sales comparison approach" was based, but Gerken was unable to explain at his deposition what criteria Martin used for selecting certain comparables and why others were excluded.  (*See id.* at 3–4.)  NorthMarq thus seeks to exclude Gerken's appraisal "opinions regarding the sales comparison approach" as well as "the income approach" as unreliable under Rules 702 and 703.  (*Id.* at 2.*)*  It further contends that "each opinion based on these inadmissible opinions—including all opinions relating to the cost to complete construction on the Property[—]should also be excluded."  (*Id.*)

Under Rule 703,

> [a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed.  If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.  But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

Fed. R. Evid. 703.  "Rule 703 illustrates that, '[u]nlike an ordinary witness, an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation.'"  *United States v. Rivera,* 2025 WL 168447, at *9 (10th Cir. June 16, 2025) (quoting *Daubert,* 509 U.S. at 592).  For instance, though not normally permitted into evidence, "Rule 702 permits experts to rely on hearsay . . . because the expert's 'validation, expertly performed and subject to cross-examination, ought to

16

suffice for judicial purposes.'" *TK-7 Corp. v. Estate of Barbouti,* 993 F.2d 722, 732 (10th Cir. 1993) (quoting Rule 703, *Adv. Comm. Notes*).

In keeping with Rule 703, "[a]n expert witness is permitted to use assistants in formulating his expert opinion, and normally they need not themselves testify." *Thompson v. Ford Motor Co.,* 2025 WL 370431, at *12 (D. Colo. Feb. 3, 2024) (quoting *Dura Auto. Sys. of Indiana, Inc. v. CTS Corp.,* 285 F.3d 609, 612 (7th Cir. 2002)). "Indeed, an expert may base part of his opinion on what a different expert believes, without necessarily requiring the underlying expert to testify at trial." *Thompson,* 2025 WL 370431, at *12.

However, "if there is a question about the underlying expert's work, the testifying expert cannot 'merely parrot what the other expert said, vouch for that expert, or become that expert's 'spokesman.'" *Id.* (quoting *HealthOne of Denver, Ind. v. UnitedHealth Grp. Inc.,* 2012 WL 94678, at *6 (D. Colo. Jan. 12, 2012)). Indeed, "an expert may not rely on the work of another expert when 'there is no indication in the record that [the expert] had any familiarity with the methods or reasoning used by [the underlying expert].'" *Thompson,* 2025 WL 370431, at *12 (citation omitted); *see also TK-7 Corp.,* 993 F.2d at 733 (Rule 703's "rationale is . . . not satisfied . . . where the expert failed to demonstrate any basis for concluding that another individual's opinion on a [matter] was reliable, other than the fact that it was the opinion of someone he believed to be an expert and who had a financial interest in making an accurate prediction").

Here, NorthMarq contends that "[i]f Mr. Gerken is allowed to testify about the sales comparison appraisal in his Report, which rests on data analyzed by Mr. Martin,

17

he will simply be acting as a spokesperson for Mr. Martin." (ECF No. 196 at 9.) In turn, NorthMarq asserts it will be "left with no opportunity to cross-examine Mr. Martin with respect to the data selected and analyzed in the Report, including which properties were comparable, which properties were not, what adjustments were made to account for characteristics and quality of properties, and the degree of those adjustments." (*Id.*)

The Court sees little issue with the fact that Gerken relied on data collected and analyzed by Martin and that Martin assisted with drafting the report, though it shares NorthMarq's concern that Gerken was unable to explain certain aspects of Martin's analysis. (*See, e.g.,* ECF No. 196-2 at 1576–8 ("Q; What demographic did [Martin] look at? / A: Well, I don't know exactly . . . .").) Even so, the Court is sensitive to the fact that granting NorthMarq's Motion would effectively amount to Gerken's wholesale exclusion as an expert at trial, and preclude Fidelity from offering any affirmative evidence as to the appraisal value of the Property at trial. In the Court's view, the issues NorthMarq has identified do not warrant such a drastic result. Rather, to the extent Gerken lacks sufficient knowledge to explain, for instance, what specific demographic data Martin used to select certain comparables, such deficiencies go to the weight to be afforded his opinions rather than their admissibility, which NorthMarq may effectively attack through cross-examination. *See Daubert,* 509 U.S. at 596 ("conventional devices" such as "[v]igorous cross-examination" and "presentation of contrary evidence," rather than "wholesale exclusion," "are the traditional and appropriate means of attacking shaky but admissible evidence"); *see also United States v. Durango & Silverton Narrow Gauge R.R. Co.,* 571 F. Supp. 3d 1203, 1207 (D. Colo. 2021) (overruling Rule 703 challenge to expert's opinion where he "plainly has expertise in the subjects of [report compiled by

18

first responders] and thus can be expected to bring his own professional judgment to their findings and conclusions"); *Guidance Endodontics, LLC v. Dentsply Intern., Inc.*, 2009 WL 3672495, at *11 (D.N.M. Sept. 29, 2009) (overruling Rule 703 challenge to expert testimony based on allegedly unverified assumptions and concluding "the proper means of attacking the foundation of [the expert's] testimony in this case is by cross-examination and contrary evidence, and not by excluding [the expert's] testimony entirely").

For these reasons, the Motion as to Gerken is denied.

### III. CONCLUSION

As more fully set forth above, the Court ORDERS that:

1. NorthMarq's Rule 702 Motion to Exclude the Opinions and Testimony of J. Bushnell Nielsen (ECF No. 194) is GRANTED IN PART and DENIED IN PART;

2. NorthMarq's Rule 702 Motion to Exclude the Opinions and Testimony of Maureen Dunn (ECF No. 195) is DENIED as MOOT;

3. NorthMarq's Rule 702 Motion to Exclude the Opinions and Testimony of Gregory T. Gerken, MAI, AI-GRS (ECF No. 196) is DENIED.

Dated this 30th day of September, 2025.

BY THE COURT:

_____
William J. Martinez
Senior United States District Judge