IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 22-cv-2839-WJM-TPO

NORTHMARQ FINANCE, LLC, a Nebraska limited liability company,

    Plaintiff,

v.

FIDELITY NATIONAL TITLE INSURANCE COMPANY, a Florida company,

    Defendant.

---

**ORDER RESOLVING DEFENDANT
FIDELITY NATIONAL TITLE INSURANCE COMPANY'S RULE 702 MOTIONS**

---

Before the Court are Defendant Fidelity National Title Insurance Company's ("Fidelity") Motions to Exclude Opinions and/or Testimony of Plaintiff's Experts (1) D. Taylor Hawes (ECF No. 197), (2) Damian Arguello (ECF No. 198), and (3) Marie D. Head (ECF No. 199) (each a "Motion," together the "Motions").  Plaintiff NorthMarq Finance, LLC ("NorthMarq") filed responses to each Motion (ECF Nos. 201, 202, 203), to which Fidelity filed replies (ECF Nos. 211, 212, 213).

For the following reasons, the Motions as to Hawes and Head are denied, and the Motion as to Arguello is granted in part and denied in part.

**I. LEGAL STANDARD**

Federal Rule of Evidence 702 "imposes on a district court a gatekeeper obligation to 'ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.'"  *Dodge v. Cotter Corp.,* 328 F.3d 1212, 1221 (10th Cir. 2003) (quoting *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 589 (1993)); *see*

Case No. 1:22-cv-02839-WJM-TPO   Document 241   filed 10/01/25   USDC Colorado
pg 2 of 10

*also United States v. Duran,* 941 F.3d 435, 452 (10th Cir. 2019) ("The district court must act as a gatekeeper, ensuring that the proffered opinions rest on a reliable foundation and are relevant to the issues."). The proponent of the expert must demonstrate by a preponderance of the evidence that the expert's testimony and opinion are admissible. *U.S. v. Nacchio,* 555 F.3d 1234, 1241 (10th Cir. 2009).

Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Civ. P. 702.

"In evaluating the admissibility of expert testimony, 'the district court must satisfy itself that the proposed expert testimony is both reliable and relevant, in that it will assist the trier of fact, before permitting a jury to assess such testimony.'" *Schulenberg v. BNSF Ry. Co.,* 911 F.3d 1276, 1282 (10th Cir. 2018) (quoting *Nacchio,* 555 F.3d at 1241). Thus, the Court must make multiple determinations.

"First, the district court must 'determine whether the expert is qualified 'by knowledge, skill, experience, training, or education' to render an opinion.'" *Schulenberg,* 911 F.3d at 1282 (quoting *Nacchio,* 555 F.3d at 1241; Fed. R. Evid. 702).

"Second, if the expert is sufficiently qualified, the Court must determine whether

2

the proposed testimony is sufficiently 'relevant to the task at hand,' such that it 'logically advances a material aspect of the case.'" *Bethel v. Berkshire Hathaway Homestate Ins. Co.,* 596 F. Supp. 3d 1260, 1265–66 (D. Colo. 2022) (quoting *Norris v. Baxter Healthcare Corp.,* 397 F.3d 878, 884, 884 n.2 (10th Cir. 2005)). "Doubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility unless there are strong factors such as time or surprise favoring exclusions." *Robinson v. Mo. Pac. R.R. Co.,* 16 F.3d 1083, 1090 (10th Cir. 1994) (quotation omitted).

Finally, "the district court 'must determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology.'" *Schulenberg,* 911 F.3d at 1283 (quoting *Nacchio,* 555 F.3d at 1241). In determining reliability, a district court must decide "whether the reasoning or methodology underlying the testimony is scientifically valid." *Norris,* 397 F.3d at 884, 884 n.2 (quoting *Daubert,* 509 U.S. at 592–93). A court may consider, nonexhaustively: "(1) whether a theory has been or can be tested or falsified, (2) whether the theory or technique has been subject to peer review and publication, (3) whether there are known or potential rates of error with regard to specific techniques, and (4) whether the theory or general approach has general acceptance." *Norris,* 397 F.3d at 884 (citing *Daubert,* 509 U.S. at 593–94). "Importantly, the court is not required 'to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.'" *Schulenberg,* 911 F.3d at 1283 (quoting *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997)).

## II. ANALYSIS[1]

Neither party has requested an evidentiary hearing on the Motions, and the Court finds that it does not need one to resolve them. See *Nacchio,* 555 F.3d at 1251 ("Tenth Circuit case law does not mandate that a [*Daubert*] hearing be held). The Court otherwise presumes the parties' familiarity with the facts and procedural history of this case from, among other sources, the Court's summary judgment orders (ECF Nos. 147, 193) and thus proceeds directly to its analysis.

**A.     D. Taylor Hawes & Marie D. Head**

NorthMarq has retained two experts, Hawes and Head, to testify regarding the United States Department of Housing and Urban Development's ("HUD") mortgage insurance programs and related requirements. "Hawes is an attorney with more than 10 years of experience as an Attorney-Advisor in the Office of General Counsel ('OGC') for [HUD]." (ECF No. 201 at 1.) He will testify "to explain HUD's role in reviewing and approving title insurance policies as part of the FHA loan process, and also to explain industry standards relating to mechanic's lien coverage in title insurance policies for HUD-insured loans." (*Id.* at 2.) Head is a non-attorney with "decades of experience working for [HUD] and in private sector commercial lending for HUD's Fair Housing Act ('FHA') lending programs." (ECF No. 202 at 1.) She will "provide opinions regarding HUD's mortgage insurance programs and HUD's requirements to close and insure loans issued thereunder." (*Id.* at 1–2.)

NorthMarq appended declarations from these experts to its Motion for Partial

---

[1] With the exception of citations to deposition transcripts, all citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

Summary Judgment ("MPSJ") to support its argument that it was entitled to summary judgment on its reasonable expectations theory. (ECF No. 148 at 4–5, 23–24; ECF Nos. 149-4, 149-5.) Based on the Court's review, the declarations submitted along with NorthMarq's MPSJ are nearly identical in content to Hawes's and Head's "Expert Statements" appended to the Motions. (*Compare* ECF No. 149-4 *with* ECF No. 199-1 and ECF No. 149-5 *with* ECF No. 197-1.)

This Court's Revised Practice Standards state:

> In civil cases, [Rule 702] motions must be filed no later than 70 days (10 weeks) before the Final Trial Preparation Conference, *unless the motion challenges expert evidence submitted in support of summary judgment briefing, in which case the motion must be filed contemporaneously with the summary judgment response or reply, as appropriate*. This practice standard concerns only the filing deadlines for Rule 702 motions and should NOT be interpreted as permitting more than one Rule 702 motion for any expert witness.

WJM Revised Practice Standards § III.H.2.A (emphasis added). Fidelity acknowledges this Practice Standard upfront in each of the Motions but states (1) as to Hawes, that it only "challenges opinions contained in Mr. Hawes' rebuttal report related to the underwriting of the Policy at issue and the parties' alleged understanding of the coverage contained therein which were not submitted in support of NorthMarq's [MPSJ]," and (2) as to Head, that it does not challenge the "particular opinions" cited by NorthMarq in support of its MPSJ. (ECF No. 197 at 1 n.1; ECF No. 199 at 1 n.1.)

The Court is unconvinced by NorthMarq's attempt to circumvent its noncompliance with the Revised Practice Standards by challenging only those opinions that were not specifically cited in NorthMarq's MPSJ. To the extent Fidelity wished to preclude NorthMarq from relying upon Hawes' and Head's expert testimony in support of its reasonable expectations theory, its opportunity to do so came and went over a

year ago when it filed its response to the MPSJ.  For this reason, Fidelity's Motions as to Hawes and Head are summarily denied as untimely.

In any event, the Court observes that many of the issues Fidelity raises in its Motions as to Hawes and Head are similar, if not identical, to issues the Court has already addressed in its Order Resolving NorthMarq's Rule 702 Motions.  (ECF No. 238.)  As a general matter, the Court will hold NorthMarq's experts to the same boundaries of admissibility set forth therein regarding, for instance, legal conclusions, analysis, and opinions concerning Fidelity's motive, intent, or state of mind upon an appropriate objection from Fidelity at trial.  Moreover, the Court shares Fidelity's concern that the opinions and testimony Hawes and Head intend to offer at trial are unnecessarily cumulative in some respects.  The Court is not inclined to subject the jury to needlessly duplicative testimony, particularly given how dense and complex this trial is already bound to be.  Accordingly, the Court will give due consideration to whether a portion of one expert's testimony should be excluded upon an appropriate objection from Fidelity at trial on the grounds of the purported cumulative or duplicative nature of the proffered testimony.

**B.      Damian Arguello**

Arguello "is an insurance lawyer and claims handling expert" who NorthMarq states will "explain[] how Fidelity's investigation and evaluation of coverage under the Policy deviated from well-established industry standards."  (ECF No. 203 at 1.)  Here again, the Court observes at the outset that NorthMarq relied on Arguello's expert report in defending against Fidelity's MSJ as to NorthMarq's common law bad faith claim.  (*See* ECF No. 158 at 15–16, 34; ECF No. 159-13.)  And here again, Fidelity failed to file its Rule 702 motion challenging the admissibility of Arguello's testimony and opinions

6

simultaneous with its reply.  Accordingly, for the same reasons discussed above, the Court summarily denies the Motion as untimely with respect to all issues save one: Fidelity's challenge to Arguello's opinions which purport to "appl[y] the reasonable expectations doctrine."  (ECF No. 198 at 5–6.)  Since NorthMarq did not rely on Arguello's expert testimony and opinions to support its reasonable expectations theory on summary judgment, the Court considers this challenge timely.  (*See generally* ECF No. 148.)

Fidelity specifically takes issue with Arguello's opinion that

> Fidelity failed to recognize and honor NorthMarq's and HUD's reasonable expectation of coverage.  In this case, there was both substantive and procedural deception on the part of Fidelity that would have led an objectively reasonable person in NorthMarq's position to believe that [they] possessed coverage against mechanic's liens that Fidelity denied. . . . .  Under these circumstances, notwithstanding the purportedly clear language of the Policy itself as issued, Fidelity's actions were deceptive.

(ECF No. 198-1 at 33–34.)  Fidelity objects that this opinion (among others) consists of improper "policy coverage/interpretation," including because he "was not retained to opine on coverage issues, and improperly usurps the Court's authority."  (ECF No. 198 at 5.)[2]

The Court agrees that Arguello "may not offer an opinion that amounts to contract interpretation."  *Bethel v. Berkshire Hathaway Homestate Ins. Co.,* 596 F. Supp. 3d 1260, 1267 (D. Colo. 2022).  But he does not appear to interpret the language of the Policy in the opinion excerpted above.  To the contrary, he states his opinion is

---

[2] Fidelity also incorporates its objection to Arguello's qualifications to testify as an expert in this case.  (ECF No. 198 at 5–6.)  However, as noted above, this challenge is untimely and the Court does not consider it herein.

7

"notwithstanding the purportedly clear language of the Policy . . . "  (ECF No. 198-1 at 33–34.)  For the avoidance of doubt, however, the Court reiterates that it will hold Arguello to the same standard as Nielsen with regard to any opinions that purport to interpret the language of the Policy: Arguello may "offer factual statements about language that is included in the Policy," generally "discuss the language contained in the Policy" and testify as to what individual, discrete terms mean to someone in the industry, to the extent such testimony would assist the trier of fact.  *Bethel,* 596 F. Supp. 3d at 1267.  But he may not interpret the contract, "opine on what the 'correct,' 'incorrect,' or 'reasonable' interpretation of a contract provision is," nor testify to the legal effect of a broader clause or provision of the Policy.  *Box Elder Kids,* 2024 WL 3950929, at *6.

Fidelity also complains that "Arguello was not retained to opine on events during the Policy issuance or underwriting."  (ECF No. 212 at 4.)  But as noted in the Court's Order Resolving NorthMarq's Rule 702 Motions, the Court has permitted Fidelity's claim handling expert to also opine on underwriting issues.  (ECF No. 238.)  Given this, the Court will likewise permit Arguello to testify to facts regarding the underwriting of the Policy to the extent they are relevant to his opinions.

Fidelity additionally argues that Arguello should not be permitted to offer "[o]pinions stating or suggesting an insurer is required to consider an insured's unasserted 'reasonable expectations' when handling a claim."  (ECF No. 198 at 6.)  It objects that such opinions are "[u]nreliable because he weighs Fidelity's decisions against an inapplicable, unfounded standard of conduct when assessing the reasonableness of handling NorthMarq's claims, and weighs the evidence yet to be

established." (*Id.* at 7.)  And its related analysis appears to focus on the fact that Arguello purports to "reach[] factual conclusions regarding what NorthMarq 'reasonably expected' under *this* title policy (which NorthMarq has yet to establish)." (*Id.* at 8.)

To the extent the Court understands the basis for Fidelity's objection, the Court disagrees that expert testimony is categorically unhelpful to the jury in determining whether NorthMarq had a reasonable expectation of coverage.  *See Capitol Specialty Ins. Corp. v. Colorado River Consulting Inc.,* 2024 WL 4041525, at *3 (D. Ariz. Sept. 4, 2024) ("The Court finds that such [expert] testimony may aid the jury in its determination of whether [the insured] had a reasonable expectation of coverage.").  Nevertheless, it agrees that Arguello should not be permitted to opine that NorthMarq reasonably expected "full mechanic's lien coverage" as a matter of law, though he may testify to facts from which the jury may infer whether NorthMarq reasonably expected such coverage "based upon his understanding of what [NorthMarq] read, reviewed, or was told, and his experience working with insureds."  *Id.* at *2.

Lastly, the Court understands Fidelity's Motion to embrace the issue of whether an insured's reasonable expectations are pertinent to whether Fidelity's handling of the claim was in bad faith.  Ultimately, the Court is unpersuaded that an insured's expectations of coverage *cannot* bear on the bad faith inquiry.  *See Stickelberger v. Gen. Sec. Nat'l Ins. Co.,* 2025 WL 902793, at *12 (D. Colo. Mar. 25, 2025) (denying summary judgment as to bad faith claim in part because the insurer "provide[d] no support for the proposition that an insured's reasonable expectations are irrelevant in determining whether an insurer acted in bad faith in denying coverage" and, "[w]hile it is true that a bad faith claim is evaluated from the perspective of the insurer," "[the insurer]

has not shown that it may knowingly disregard [the insured's] reasonable expectation when denying coverage"). Accordingly, the Court will permit Arguello to opine as to whether, in his experience, an insurer takes into consideration the insured's expectations of coverage when handling a claim. Fidelity is, of course, free to challenge Arguello's bases for opining that an insured's expectations of coverage are pertinent to the insurer's handling of a claim on cross-examination.

For these reasons, the Motion as to Arguello is granted in part and denied in part in accordance with the foregoing parameters.

### III. CONCLUSION

For the reasons explained above, the Court ORDERS that:

1. Fidelity's Motion to Exclude Testimony of Daniel Taylor Hawes (ECF No. 197) is DENIED;

2. Fidelity's Motion to Exclude Testimony of Damian Arguello (ECF No. 198) is GRANTED IN PART and DENIED IN PART; and

3. Fidelity's Motion to Exclude Testimony of Marie D. Head (ECF No. 199) is DENIED.

Dated this 1st day of October, 2025.

BY THE COURT:

_____
William J. Martinez
Senior United States District Judge