IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 22-cv-2839-WJM-TPO

NORTHMARQ FINANCE, LLC, a Nebraska limited liability company,

    Plaintiff,

v.

FIDELITY NATIONAL TITLE INSURANCE COMPANY, a Florida company,

    Defendant.

## ORDER DENYING DEFENDANT'S REQUEST TO REOPEN DISCOVERY

In August 2025, Defendant Fidelity National Title Insurance Company ("Fidelity") and Plaintiff NorthMarq Finance, LLC ("NorthMarq") jointly contacted the chambers of U.S. Magistrate Judge Timothy P. O'Hara regarding "Fidelity's request for a Discovery Conference" pursuant to D.C.COLO.MJ VI.  Specifically, the parties asked Judge O'Hara to decide whether discovery should be narrowly reopened based on Fidelity's belief that "NorthMarq failed to properly supplement its discovery responses as required under Fed. R. Civ. P. 26(e) related to a January 2025 conveyance of the [P]roperty."[1] (Aug. 7, 2025 E-mail to O'Hara Chambers.)

As set forth in Judge O'Hara's recent Order, the undersigned has decided to resolve the parties' discovery dispute in the first instance, given its familiarity with the issues on summary judgment.  (*See* ECF No. 242.)  After reviewing the discovery

---

[1] Unless otherwise defined herein, capitalized terms have the same meaning ascribed to them in the Court's summary judgment order at ECF No. 193.

position statements the parties filed at Judge O'Hara's direction, the Court concludes it does not need a discovery conference or hearing to resolve Fidelity's request to reopen discovery.  (ECF Nos. 200, 207, 208.)

For the reasons set forth below, Fidelity's request is denied.

## I. BACKGROUND[2]

Discovery closed in this case long ago, on December 8, 2023.  (ECF No. 78.)  Nevertheless, in June 2025, Fidelity sent a discovery deficiency letter to NorthMarq, stating that, "[b]ased on a review of publicly recorded property records in Jefferson County," that "[KC I] sold and conveyed the Property to Northwood Littleton Investors, LLC ('Northwood') . . . via Special Warranty Deed recorded on January 14, 2025."  (ECF No. 208-1 at 2.)  The conveyance is related to "NorthMarq's 2025 joint venture with Woodbury Corporation ('JV')."  (ECF No. 214 at 2.)  Fidelity asserted that the "records and other information related to the property transfer are clearly within the scope of discovery Fidelity has already requested in this case," and complained that NorthMarq had not "disclose[d] to Fidelity information regarding this transfer at or since the time of the conveyance, nor has it supplemented any responses to Fidelity's prior discovery requests."  (ECF No. 208-1 at 2.)

Over the weeks that followed, "NorthMarq supplemented its production with JV-related documents" in what it characterizes as an attempt "solely to avoid a discovery dispute; not because they are responsive or relevant."  (ECF No. 214 at 3; *see also* ECF No. 207 at 3 (referring to "the documents NorthMarq finally supplemented in June

---

[2] All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

and July 2025 (more than 2,300 pages)"); ECF No. 208 at 9 n.1 (referring to "NorthMarq's July 2025 supplemented production").)  However, based on information disclosed in the supplemental production, Fidelity asks the Court to reopen discovery on a limited basis so that it may take the following additional discovery:

> (1) one three-hour Rule 30(b)(6) deposition of NorthMarq; (2) one three-hour Rule 30(b)(6) deposition of Woodbury Corporation; (3) the Court's permission to serve a subpoena duces tecum on Woodbury Corporation; and (4) an order directing NorthMarq to fully and accurately supplement its discovery responses as required under Rule 26(e), even in the event the Court rules against Fidelity's request to reopen discovery.

(ECF No. 207 at 7.)

## II. LEGAL STANDARD

"Whether to extend or reopen discovery is committed to the sound discretion of the trial court . . . ."  *Smith v. U.S.,* 834 F.2d 166, 169 (10th Cir. 1987).  Courts consider "several relevant factors" in deciding "whether discovery should be reopened, including: (1) whether trial is imminent, (2) whether the request is opposed, (3) whether the non-moving party would be prejudiced, (4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, (5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and (6) the likelihood that the discovery will lead to relevant evidence."  *Id.*

## III. ANALYSIS

Given that Fidelity seeks additional discovery to explore matters that largely took place after fact discovery had closed in this case, the Court assumes for present purposes that the fourth and fifth *Smith* factors—whether the moving party was diligent in obtaining discovery and the foreseeability of the need for additional discovery during

3

the discovery period—weigh in favor of reopening discovery (though NorthMarq argues otherwise). 834 F.2d at 169. The Court proceeds to consider the four remaining *Smith* factors.

A.     **Likelihood that the Discovery Will Lead to Relevant Evidence**

The Court begins with the final factor—the likelihood that the discovery will lead to relevant evidence. *Id*. Fidelity argues that the requested additional discovery is relevant to two issues: (1) the value of the Property, as it pertains to NorthMarq's damages model, and (2) certain of Fidelity's affirmative defenses.

1.     Damages Valuation

Fidelity first argues that "NorthMarq has insisted the value of the Property is an integral component of its damages calculation," but "[t]he limited documents NorthMarq has now, belatedly, produced strongly suggest the value of the Property and cost of paying off the security are far off from what NorthMarq has claimed." (ECF No. 207 at 5.)

To the extent Fidelity contends that the sale price of the Property in January 2025 is directly relevant to NorthMarq's damages, the Court disagrees. "A mortgagee suffers actual loss under a lender's title insurance policy only to 'the extent to which the insured debt is not repaid because the value of security property is diminished or impaired by outstanding lien encumbrances or title defects covered by the title insurance." *Twin Cities Metro-Certified Development Co. v. Stewart Title Guar. Co.,* 868 N.W.2d 713, 718 (Minn. App. 2015) (quoting *Cale v. Transam. Title Ins.,* 225 Cal.App.3d 422, 426 (1990)). Accordingly,

> a lender who claims injury from an undisclosed lien, and who has foreclosed and obtained title to the property, must 'prove at trial . . . *as of the date of foreclosure* . . . [t]hat the value of

4

>      the subject property was less than the total of [Lender's] lien
>      plus all prior liens.  This is so because *if the value of the
>      subject property, obtained at foreclosure, was sufficient to
>      satisfy all liens, including [Lender's],* he would suffer no
>      damage.

*Karl v. Commonwealth Land Title Ins. Co.,* 20 Cal.App.4th 972, 985 (1993) (quoting *Cale,* 225 Cal.App.3d at 429 (Sims, J., dissenting)) (emphasis added in original).

Here, "it is unknown what the property would have brought at a sheriff's sale," "[b]ecause [NorthMarq] did not seek foreclosure of its mortgage." *Green v. Evesham Corp.,* 430 A.2d 944, 948–49 (N.J. Super. 1981). Nevertheless, the Court is persuaded that the date of the deed in lieu ("DIL") is the appropriate reference point for valuing the Property.  *See id.* ("[W]here the lender purchases the property at a sheriff's sale at a price sufficient to satisfy the debt it ceases to have any interest in the property as a mortgagee.  These propositions are no less viable where the claim arises under a title policy or where the debt is satisfied by taking a deed in lieu of foreclosure."); *Cale,* 225 Cal.App.3d at 431 (1990) (distinguishing cases relied on by Transamerica where "the value of the property obtained by the insured by foreclosure (or deed in lieu thereof) was shown to be sufficient to satisfy the insured's lien"); *see also Blackhawk Prod. Credit Ass'n v. Chicago Title Ins. Co.,* 423 N.W.2d 521, 525 (Wis. 1988) ("courts have recognized that in addition to foreclosure, any other reasonable means are acceptable to determine the value of the mortgagee's security interest").

"Since the value of the property is to be determined as of foreclosure"—or here, as of the DIL—"whether the price [NorthMarq] received on later sale was good or bad, and whether they structured the sale favorably or unfavorably, should not control the valuation."  *Karl,* 20 Cal.App.4th at 986.  True, a later resale transaction *can be* relevant, "to the extent the resale transaction constitutes material on which experts might rely to

5

determine fair market value as of foreclosure." *Id.* But "resale of the property" may, more specifically, "be deemed evidence of the value of the property at foreclosure" where the transaction occurred "at arm's length and *at a date closely following foreclosure*." *Id.* (emphasis added) (reasoning resale transaction occurring *one month* after foreclosure was relevant to property's valuation). Thus, a transaction taking place over *three years* after NorthMarq's designee took title to the Property via the DIL bears marginal relevance, at best, to the valuation of the Property in October 2021.

Nevertheless, Fidelity also argues that, "[e]ven assuming NorthMarq is correct the diminution of property value is determined based on the market value on October 14, 2021 . . . any appraisals before the January 2025 conveyance are relevant to NorthMarq's damages model—specifically, whether [NorthMarq's appraisal expert's] valuation is credible . . . ." (ECF No. 207 at 6.) Fidelity claims that, "[t]o use these documents at trial, . . . [it] must engage in some limited discovery, as it lacks context to lay appropriate foundation for admissibility—especially considering the only 'will call' witness NorthMarq has identified for trial is not a NorthMarq officer and may or may not have personal knowledge of these documents." (*Id.* at 5.) But Fidelity's argument is inherently flawed because it need not establish the admissibility of the documents included in NorthMarq's supplemental production to use them for impeachment purposes at trial. *See Great Northern Ins. Co. v. Grounded Techs., Inc.,* 2020 WL 13566114, at *2–3 (D. Wyo. May 6, 2020) (explaining that late-disclosed documents "may be properly introduced" "to impeach a witness" as "[i]t is well-established that a document used solely for purposes of impeachment need not be admissible under hearsay rules" and "evidence used solely for impeachment need to be noticed or

6

disclosed prior to trial").

Accordingly, the discovery Fidelity seeks bears little, if any, relevance to its defense against NorthMarq's asserted damages and does not justify reopening discovery at this late stage.

2. Fidelity's Defenses

Second, Fidelity argues that evidence related to the January 2025 "bears directly" on its affirmative defenses,

> particularly those referencing (1) the definition of 'indebtedness' under Condition 1 of the Policy; (2) *Continuation of Insurance* under Condition 2; (3) *Determination and Extent of Liability* under Condition 8; (4) *Reduction or Termination of Liability* under Condition 10; and (5) whether NorthMarq is precluded from coverage, pursuant to the Policy's *Exclusions from Coverage,* because it has not sustained loss or damage due to the alleged title defect.

(ECF No. 207 at 2.)[3]  Specifically, Fidelity now argues that "[t]he January 2025 conveyance . . . is a separate transaction from the 2021" DIL Agreement that Fidelity raised on summary judgment, "and provides an independent basis for Fidelity to raise these defenses at trial."  (ECF No. 207 at 5.)

The Court is unpersuaded.  Even assuming the January 2025 conveyance of the Property terminated NorthMarq's coverage under the Policy, as Fidelity suggests, neither Condition 2 nor Condition 10 "defeat coverage for losses which occurred during the policy period, before termination of coverage."  *CBI Investors, Inc. v. Chicago Title*

---

[3] The Court acknowledges that there is an outstanding dispute regarding whether Fidelity may still assert its affirmative defenses at trial.  (*See, e.g.,* ECF No. 217.)  The Court will weigh in on that dispute in short order but assumes without deciding, for present purposes, that the affirmative defenses identified in Fidelity's brief are preserved.

Case No. 1:22-cv-02839-WJM-TPO   Document 258   filed 10/07/25   USDC Colorado
pg 8 of 10

*Ins. Co.,* 2025 WL 859804, at *8 (D. Kan. Mar. 19, 2025); *see also Western Capital Partners LLC v. First Am. Title Ins. Co.,* 2015 WL 1298504, at *3 (D. Colo. Mar. 19, 2015) (analyzing title insurance policy exclusion identical to Condition 10 and concluding that, "because Plaintiff's loss occurred at the moment Lot 176 was transferred, the Policy was in force at the time of the loss and was not voided by any subsequent assignment of the [mortgage]").  Here, the loss or damage claimed by NorthMarq stems from events taking place in 2020 and 2021.  Accordingly, a transaction taking place four years later cannot negate NorthMarq's pre-existing claim for loss or damage covered by the Policy.

For the foregoing reasons, the final *Smith* factor weighs against reopening discovery.

**B.     Whether Trial is Imminent**

Trial is set for November 3, 2025—less than a month away.  The first factor weighs heavily against Fidelity's request to reopen discovery.  *Cf. Am. Auto. Ins. Co. v. Marlow,* 666 F. Supp. 2d 1209, 1217 (D. Colo. 2009) (finding trial date "less than two months" away weighed against reopening discovery).

**C.     Whether the Request is Opposed**

NorthMarq opposes Fidelity's request to reopen discovery.  (*See generally* ECF No. 208.)  The second factor weighs against Fidelity's request to reopen discovery.  *Cf. Morrison v. Safeco Ins. Co. of Am.,* 2025 WL 1155934, at *1 (D. Colo. Feb. 24, 2025) (Chung, M.J.) (same).

**D.     Whether the Non-Moving Party Would Be Prejudiced**

Fidelity argues that "[a]ny prejudice NorthMarq could possibly identify . . . is self-induced and otherwise pales in comparison to its efforts to withhold this information

8

from Fidelity." (ECF No. 207 at 6.)  But NorthMarq counters that reopening discovery at this stage "would impose a clear burden: NorthMarq would be required to produce non-responsive and irrelevant documents, prepare a witness and sit for depositions on irrelevant issues (the JV) and topics already covered (damages)." (ECF No. 214 at 6.)

Even assuming that Fidelity is correct in its assertion that NorthMarq should have sooner supplemented its document production, the Court must agree that NorthMarq "would be prejudiced by having to adjust their approach to defending this litigation well after the close of discovery and the passing of the dispositive motion deadline"—particularly in light of the marginal relevance of the discovery sought. *AssociationVoice, Inc. v. Athomenet, Inc.,* 2011 WL 2297677, at *3 (D. Colo. June 9, 2011). Thus, attributing some fault to NorthMarq for the late production, the Court considers this factor neutral.

In sum, two factors weigh in favor of Fidelity's request to reopen discovery, one is neutral, and three weigh against Fidelity's request to reopen discovery. Though the factors weighing against reopening discovery represent a simple mathematical majority, the Court places particular weight to the imminence of the trial date and the marginal relevance of the discovery Fidelity seeks. Fidelity's request to reopen discovery is thus denied, as is its alternative request that the Court order NorthMarq to supplement its written discovery responses. This case will proceed to trial on November 3, 2025.

### IV. CONCLUSION

For all the reasons set forth above, Fidelity's request to reopen discovery (ECF No. 207) is DENIED.

9

Dated this 7th day of October, 2025.

BY THE COURT:

_____
William J. Martinez
Senior United States District Judge