IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 22-cv-2839-WJM-TPO

NORTHMARQ FINANCE, LLC, a Nebraska limited liability company,

    Plaintiff,

v.

FIDELITY NATIONAL TITLE INSURANCE COMPANY, a Florida company,

    Defendant.

---

**ORDER AMENDING SUMMARY JUDGMENT ORDER**

---

    It is apparent from the parties' pretrial filings that certain disagreements remain regarding the legal effect of the Court's Order (1) Granting in Part and Denying in Part NorthMarq's Motion for Partial Summary Judgment and (2) Denying Fidelity's Motion for Summary Judgment ("SJ Order") (ECF No. 193).  As noted during the Final Trial Preparation Conference, it is regrettable that one or both parties did not take the affirmative step of filing a motion for clarification of the SJ Order at the earliest opportunity, so that the Court might have sooner elucidated these issues for the parties' trial preparation.

    Nevertheless, the Court fears that, if it does not address certain issues head-on now, an already complex trial will be fraught with time-consuming argument and objections over the intent and effect of the SJ Order.  Accordingly, the Court hereby *sua sponte* amends the SJ Order to clarify two liability issues, as specified below.  *See Beltran v. InterExchange, Inc.,* 2018 WL 3729505, at *5 (D. Colo. Aug. 6, 2018) ("A

district court may reconsider its own interlocutory order, *sua sponte* or on motion, at any time prior to the entry of final judgment pursuant to Rule 54(b).").

## I. ANALYSIS[1]

### A.   Duty to Indemnify – Plain Language

After interpreting the Endorsement, the Court concluded "as a matter of law" that "Fidelity had a duty to indemnify NorthMarq for the loss or damage it sustained by reason of the lack of priority of the Insured Mortgage over the Petra Lien, but only to the extent that the Petra Lien was based on services, labor, material or equipment Petra furnished *before* November 18, 2019." (ECF No. 193 at 33.) The parties now disagree as to whether, in so holding, the Court "made a liability determination on NorthMarq's claim for a breach of the duty to indemnify." (ECF No. 253 at 2; *see also* ECF No. 217 at 2 (arguing "liability under the Policy was already established by the Court").) The Court clarifies herein that it was not its intent to resolve the ultimate issue of Fidelity's liability for *breach* of a duty to indemnify under the Endorsement, particularly because the issue of whether NorthMarq suffered indemnifiable loss or damage remains a fact issue to be resolved at trial.

In all fairness to NorthMarq, the Court must begin by observing that NorthMarq's Motion for Partial Summary Judgment ("MPSJ") indeed sought "summary judgment *on liability* on NorthMarq's breach of contract claim arising out of [Fidelity's] breach of its dut[y] to . . . indemnify its insured." (ECF No. 148 at 1 (emphasis added); *see also* ECF

---

[1] All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination. Moreover, unless otherwise defined, all capitalized terms herein having the same meaning ascribed to them in the SJ Order. (*See generally* ECF No. 193.)

2

No. 148 at 34 ("NorthMarq respectfully requests the Court enter partial summary judgment in its favor with respect to *liability for breach* of the dut[y] to . . . indemnify.") (emphasis added).)  Fidelity now seeks to avoid the conclusion that the Court made a liability determination on its duty to indemnify by arguing that *coverage* and *actual liability* are distinct, yet its response to the MPSJ appeared to only address the former. (*Compare* ECF No. 160 at 26 (urging "the Court to reject NorthMarq's request for summary judgment on the issue of *coverage* under Section 3(c) of the Endorsement") (emphasis added), *with* ECF No. 237 at 1 (arguing "[t]he Court's finding that coverage *exists* . . . is not the same as finding *actual liability*") (emphasis added).)  This leads the Court to the inevitable conclusion that Fidelity misapprehended the scope of NorthMarq's MPSJ.

Notwithstanding, Fidelity is correct to observe that the Court deliberately stopped short of finding there had been a *breach* of a duty to indemnify as a matter of law. (*Compare* ECF No. 193 at 51 ¶ 3(a) ("Fidelity had a duty to defend NorthMarq in the Lien Suits, *which it breached* by refusing to provide NorthMarq any defense") (emphasis added), *with id.* at ¶ 3(b) ("Fidelity had a duty to indemnify NorthMarq for any loss or damage NorthMarq sustained by reason of the lack of priority of the Insured Mortgage . . . .").)  And in a strict sense, the Court's ultimate holding in the SJ Order regarding Fidelity's duty to indemnify based on the Endorsement's plain language remains accurate: "Fidelity had a duty to indemnify NorthMarq for any loss or damage NorthMarq sustained by reason of the lack of priority of the Insured Mortgage over the Petra Lien, but only to the extent that the Petra Lien is based on work furnished *before* the Date of Coverage."  (ECF No. 193.)

3

Rather, where the Court likely tread too far was in finding "that the [Petra] settlement agreement [was] sufficient to establish there was, in fact, loss or damage covered by Section 3(c)," though reserving "[t]he question of precisely what loss or damages [NorthMarq] ultimately realized [would] be a fact question to be resolved at trial." (*See* ECF No. 193 at 32–33.)  Applicable caselaw—and NorthMarq's damages model—supports the notion that NorthMarq will have sustained no indemnifiable loss if the value of the Property as of the DIL Agreement exceeds NorthMarq's asserted combined losses, including the cost of clearing the Liens at issue.  *See Karl v. Commonwealth Land Title Ins. Co.,* 20 Cal.App.4th 972 (1993) ("if the value of the subject property, obtained at foreclosure, was sufficient to satisfy *all liens*, including [the lender's], he would suffer no damage" (emphasis added)); *Mid-South Title Ins. Corp. v. Resolution Tr. Corp.,* 840 F. Supp. 522, 528 (W.D. Tenn. 1993) (reasoning there was "loss to the lender" where the lender's "recovery on the loan, as established by the foreclosure bid, was inadequate to fully cover prior loan advances, much less to cover *any additional payments to clear the liens*") (emphasis added).  (*See* ECF No. 158 at 31–32 (arguing in response to Fidelity's MSJ that its asserted damages were "offset by the estimated market value of the Property").)[2]

To be sure, Fidelity put up a weak defense to NorthMarq's contention that the Petra settlement agreement was evidence of covered loss or damage in its response to the MPSJ.  (*See* ECF No. 160 at 16 ¶ 91 (broadly denying NorthMarq's factual averment regarding the Petra settlement agreement but otherwise failing to address

---

[2] The Court expresses no opinion in this Order as to whether any of NorthMarq's claimed categories of damage are recoverable as damages flowing from Fidelity's breach of the duty to defend or NorthMarq's bad faith claim.

4

NorthMarq's assertion that the settlement agreement was evidence of covered loss or damage in its argument).)[3]  Nevertheless, its cross-MSJ sufficiently established (even if just so) that there are genuine issues of material fact as to whether NorthMarq sustained indemnifiable loss or damage *on these facts* that preclude summary judgment on the issue of whether Fidelity *actually breached* a duty to indemnify NorthMarq, particularly in light of the disputed value of the Property.  (*See, e.g.,* ECF No. 150 at 30 (arguing that, based on disputed evidence regarding the value of the Property, "NorthMarq is currently reflecting a gain of nearly $5 million").)  Indeed, it was partly *NorthMarq's* insistence in response to these arguments that the scope of its damages were a fact issue for trial, and inappropriate for resolution by way of summary judgment, that prevented the Court from going so far as to say that Fidelity had breached its duty to indemnify as a matter of law.  (*See, e.g.,* ECF No. 158 at 31 ("The nature and exten[t] of NorthMarq's claimed damages is a disputed issue of fact for which summary judgment is not appropriate.").)

Thus, to the extent the SJ Order is fairly read to decide as much, it was premature for the Court to suggest that the Petra settlement was alone sufficient to establish that NorthMarq sustained an *indemnifiable* loss as a matter of law.  In the interest of clarity for trial, the Court restates its holding granting in part NorthMarq's

---

[3] Certainly, Fidelity did not argue that a settlement payment *cannot* be "loss or damage sustained by the Insured by reason of the . . . [t]he lack of priority of the lien of the Insured Mortgage . . . ." (ECF No. 149-6 at 34.)  And the Court does not decide that, either.  *See Home Federal Sav. Bank v. Ticor Title Ins. Co.,* 695 F.3d 725, 728 (7th Cir. 2012) (concluding insured had right to seek indemnification for settlement reached with mechanic's lien claimant); *Chicago Title Ins. Co. v. Resolution Tr. Corp.,* 53 F.3d 899, 908 (8th Cir. 1995) (finding receiver for insured lender was entitled "as a matter of law to recover under the policy the amount it paid in settlement").

MPSJ as follows: the Endorsement covered NorthMarq for loss or damage it sustained by reason of the lack of priority of the Lien of the Insured Mortgage over the Petra Lien, to the extent the Petra Lien was based on services labor, material or equipment Petra furnished *before* November 18, 2019.  However, genuine issues of material fact preclude summary judgment as to not only the *extent* of NorthMarq's covered loss or damage, but also as to *whether* NorthMarq sustained covered loss or damage in the first instance.

### B.     Reasonable Expectations Doctrine

Fidelity also raises the issue of whether, following the Court's SJ Order, "NorthMarq has an active claim or legal theory based on any [application] of the reasonable expectations doctrine other than procedural deception given the Court's prior orders finding the Policy unambiguous." (ECF No. 253 at 2.)

Fidelity did not specifically move for summary judgment on the reasonable expectations theory of NorthMarq's breach of contract claim.  (*See generally* ECF No. 150.)  For the same reason, the Court did not consider whether Fidelity was entitled to summary judgment on the application of the reasonable expectations doctrine in the SJ Order.  (ECF No. 193 at 42–43.)

Upon further consideration, however, the Court is of the view, given that Fidelity sought summary judgment on NorthMarq's breach of contract *claim*, it may appropriately grant summary judgment to Fidelity, in part, on the reasonable expectations *theory* of NorthMarq's breach of contract claim, without exceeding the scope of relief sought in the MSJ.  *See Domokos v. Shelter Mut. Ins. Co.,* 416 F. Supp. 3d 1209 (D. Colo. 2019) (granting summary judgment in favor of insurer where insurer moved against breach of contract claim without specifically addressing plaintiff's

6

reasonable expectations theory in its affirmative motion); *Residences at Olde Town Square Ass'n v. Travelers Casualty Ins. Co. of Am.,* 430 F. Supp. 3d 743 (D. Colo. 2019) (declining to grant summary judgment in favor of insurer on reasonable expectations theory where "Defendant did not move for summary judgment against *any* breach of contract theory" (emphasis added)).

For the same reasons discussed in the SJ Order, the Court concludes that the first manifestation of the reasonable expectations theory has no application here. (*See* ECF No. 193 at 40 ("Even from the perspective of an ordinary reader, the Endorsement's plain language is quite *unambiguous* that coverage is precluded for (1) services furnished by lien claimants after the Date of Coverage and (2) where the mechanic's lien claimant is not a direct payee of Fidelity or NorthMarq.").) Thus, the Court further amends the SJ Order to grant summary judgment to Fidelity on NorthMarq's breach of contract claim to the limited extent NorthMarq's claim is based on the *first* application of the reasonable expectations doctrine. Whether the *second* application of the reasonable expectations doctrine applies to afford greater mechanic's lien coverage to NorthMarq remains a fact issue for trial.

## II. CONCLUSION

For all the foregoing reasons, the Court ORDERS that its Order (1) Granting in Part and Denying in Part NorthMarq's Motion for Partial Summary Judgment and (2) Denying Fidelity's Motion for Summary Judgment (ECF No. 193) is AMENDED as more fully set forth above.

Dated this 15th day of October, 2025.

BY THE COURT:

_____
William J. Martinez
Senior United States District Judge