IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 22-cv-2839-WJM-TPO

NORTHMARQ FINANCE, LLC, a Nebraska limited liability company,

    Plaintiff,

v.

FIDELITY NATIONAL TITLE INSURANCE COMPANY, a Florida company,

    Defendant.

---

**ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFF NORTHMARQ FINANCE, LLC'S MOTION *IN LIMINE***

---

Before the Court is Plaintiff NorthMarq Finance, LLC's ("NorthMarq") Motion *in Limine* ("Motion"). (ECF No. 217.) Defendant Fidelity National Title Insurance Company ("Fidelity") filed a response. (ECF No. 237.) For the following reasons, the Motion is granted in part and denied in part.

**I. LEGAL STANDARDS**

"A motion *in limine* is a request for guidance by the court regarding an evidentiary question, which the court may provide at its discretion to aid the parties in formulating trial strategy." *Jones v. Stotts,* 59 F.3d 143, 146 (10th Cir. 1995). "The purpose of a motion *in limine* is to allow the Court to decide evidentiary issues in advance of trial to avoid delay and ensure an evenhanded and expeditious trial." *Dry Clean Super Ctr., Inc v. Kwik Indus., Inc.,* 2012 WL 503510, at *4 (D. Colo. Feb. 15, 2015).

"The moving party bears the burden of demonstrating in their motion in limine that the evidence at issue 'is inadmissible on any relevant ground.'" *Wheatridge Office,*

*LLC v. Auto-Owners Ins. Co.,* 578 F. Supp. 3d 1187, 1201 (D. Colo. Jan. 4, 2022) (quoting *Pinon Sun Condo. Ass'n Inc. v. Atain Specialty Ins. Co.,* 2020 WL 1452166, at *3 (D. Colo. Mar. 25, 2020)).  "The Court can deny a motion if the movant fails to set out, with the necessary specificity, the evidence it wishes to have precluded." *Wheatridge Office,* 578 F. Supp. 3d at 1201.  "Denial of a motion in limine, however, does not mean that all the evidence contemplated in the motion will automatically be admitted at trial—'the court may alter its limine ruling based on developments at trial or on its sound judicial discretion' if one of the parties raises the question at that time."  *Id.* (quoting *Pinon Sun Condo Ass'n,* 2020 WL 1452166, at *3).

Under Federal Rule of Evidence 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401.

"Relevant evidence is admissible" unless the United States Constitution, a federal statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court provide otherwise.  Fed. R. Evid. 402.  In particular, "the court may exclude relevant evidence" pursuant to Federal Rule of Evidence 403 "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  "The district court has considerable discretion in performing the Rule 403 balancing test."  *United States v. Tan,* 254 F.3d 1204, 1211 (10th Cir. 2001).

"Irrelevant evidence is not admissible."  Fed. R. Evid. 402.

## II. ANALYSIS[1]

A.     **Issues #1 & 7: Evidence or Argument Relating to Liability Defenses and/or Issues Resolved by the Court in Granting NorthMarq's Motion for Partial Summary Judgment in Part**

NorthMarq first requests that "the Court exclude evidence or argument supporting any liability-related defense because liability under the Policy was already established by the Court." (ECF No. 217 at 2–3.) Relatedly, NorthMarq's seventh request is "that the Court preclude Fidelity from introducing evidence, eliciting testimony, or making argument on any issue resolved by summary judgment, including securitization, insured status, and alleged satisfaction of the note." (*Id.* at 10.)

The Court has now clarified that Fidelity's liability for breach of a contractual duty to indemnify has *not* been fully determined. (ECF No. 264.) For the same reason, the Court declines to issue a blanket ruling precluding Fidelity from raising "any . . . defense that constitutes or could be deemed a defense to liability." (ECF No. 217 at 4.) *See also Strong v. Cochran et al.,* 2019 WL 7290835, at *5–6 (D. Utah Dec. 30, 2019) (distinguishing the same authorities cited by NorthMarq on the grounds that they applied only where the "complete issue of liability" has been determined).

That said, "[w]here the court fully resolved certain issues (even without fully resolving an entire cause of action or affirmative defense), the court's conclusions are the law of the case and will not be revisited at trial." *Id.* at *4. Thus, the Court agrees

---

[1] With the exception of citations to deposition transcripts, all citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination. Moreover, unless otherwise defined herein, all capitalized terms have the same meaning ascribed to them in the Court's Order (1) Granting in Part and Denying in Part NorthMarq's Motion for Partial Summary Judgment and (2) Denying Fidelity's Motion for Summary Judgment ("SJ Order"). (ECF No. 193.)

with NorthMarq that Fidelity should not be permitted to rehash the same arguments at trial that the Court considered and rejected on summary judgment in ultimately concluding that "the Endorsement covered NorthMarq for loss or damage it sustained by reason of the lack of priority of the Lien of the Insured Mortgage over the Petra Lien, to the extent the Petra Lien was based on services, labor, material or equipment Petra furnished *before* November 18, 2019." (ECF No. 264 at 6.)

That is, the Court could not have determined, *as a matter of law*, that Fidelity had a duty to indemnify NorthMarq for any (to be determined) actual loss flowing from the loss of priority of the lien of the Insured Mortgage over the Petra Lien had it concluded there was an issue of material fact as to whether NorthMarq was an "Insured," whether any Policy coverage terminated in conjunction with NorthMarq's settlement with KCSL, or whether NorthMarq had "forgiven" the "Indebtedness" as a result of that same settlement. (*See* ECF No. 193.) Fidelity would effectively invite the jury to reconsider the Court's legal finding as to coverage if it put on evidence and argument regarding these same issues at trial.

Accordingly, the Motion is granted in part to the extent that Fidelity will not be permitted to present argument or evidence at trial in support of defenses that the Court rejected on summary judgment in finding NorthMarq was entitled to coverage for losses incurred as a result of the Petra Lien under the Endorsement as a matter of law. However, as the issue of Fidelity's liability for breach of its contractual duty to indemnify has not been fully determined, the Motion is denied to the extent that NorthMarq seeks to preclude Fidelity from presenting argument or evidence in support of defenses that are appropriately preserved in the Final Pretrial Order and that the Court did *not*

4

consider and reject as a complete defense to *coverage* on summary judgment.

B.        **Issues #2 & 3: Evidence Relating to the Woodbury Joint Venture and Post-Deed in Lieu of Foreclosure Damages Mitigation, and Certain Evidence in Support of Property Valuation**

"NorthMarq moves to exclude evidence and argument relating to its joint venture ('JV') with Woodbury Corporation ('Woodbury')" and certain evidence Fidelity ostensibly intends to rely upon to establish the Property's value, including but not limited to "a letter of intent ('LOI') [ECF No. 217-2], contribution agreement and other JV-related documents [ECF Nos. 217-3, 217-4], expert testimony [ECF No. 208-7], and other post-Deed-in-Lieu of Foreclosure mitigation efforts." (ECF No. 217 at 4–5.) NorthMarq argues "[t]his evidence is irrelevant and inadmissible under Rules 401 and 402" because "[t]he JV transaction occurred at the end of 2024—more than four years after Fidelity denied coverage and three years after KC I, LLC acquired the Property"—and "does not reflect the Property's value at the relevant time: the date of the Deed in Lieu of Foreclosure." (*Id.* at 5–6.) Moreover, it asserts that Fidelity should not be permitted "to introduce JV evidence for impeachment of 'credibility'" because "[u]nder the collateral matter rule, impeachment evidence must relate to a material issue." (*Id.* at 5.)

The Court has denied Fidelity's request to amend the Final Pretrial Order ("FPTO") to incorporate defenses based on the alleged conveyance of the Property in January 2025. (ECF Nos. 257, 263.) Accordingly, the Motion is granted to the extent that Fidelity will not be permitted to present substantive evidence or argument in support of any defenses predicated on the January 2025 conveyance at trial, as those defenses have not been preserved in any event. *See Wilson v. Muckala,* 303 F.3d 1207, 1215 (10th Cir. 2002) ("Claims, issues, defenses, or theories of damages not included in the pretrial order are waived . . . .").

Regarding the use of the challenged evidence for impeachment purposes, however, it is unclear to the Court that the collateral matter rule applies. "The collateral matter rule is a subset of a court's authority to exclude impeachment evidence under Rule 403." *U.S. v. Woody,* 250 F. App'x 867, 882 (10th Cir. 2007). "The danger of allowing impeachment via a collateral matter is that when the fact to be impeached is not material, 'the trier of fact may become confused by the attention directed at an unimportant fact. As a result, the trier of fact may attach undue importance to extraneous matters.'" *Id.* at 883 (quoting 27 Charles Alan Wright & Victor James Gold, Fed. Prac. & P. § 6096). But "[t]hat evidence concerns a collateral matter does not, of course, necessarily render it inadmissible. To the contrary, such evidence is admissible provided that it is 'relevant' and not otherwise prescribed by law or rule." *Woody,* 250 F. App'x at 883 (quoting *United States v. Fonseca,* 435 F.3d 369, 374–75 (D.C. Cir. 2006)). "Under Rule 401, evidence that contradicts a witness's trial testimony, even on a collateral subject, may be relevant 'because it would undermine [his] credibility as a witness regarding facts of consequence.'" *Woody,* 250 F. App'x at 883 (quoting *Fonseca,* 435 F.3d at 375).

At this time, the Court lacks sufficient context to make a definitive ruling as to whether Fidelity's use of the challenged evidence to impeach the credibility of NorthMarq's appraisal expert (or other witnesses) is sufficiently pertinent to the value of the Property as of the deed-in-lieu of foreclosure—a material issue for trial—to pass muster under Rule 403's balancing test. Accordingly, the Motion is denied to the extent Fidelity intends to use the challenged evidence for impeachment purposes, though the Court will consider anew an appropriate Rule 403 objection from NorthMarq at trial.

6

For these reasons, the Motion is granted in part to the extent that Fidelity will not be permitted to rely upon the challenged evidence to support any unpreserved issue or defense at trial but denied in part to the extent that Fidelity intends to rely upon the challenged evidence for impeachment purposes.

**C.     Issue #4: Evidence Relating to Payment for Defense Costs Following Court's Order Regarding Fidelity's Duty to Defend**

Next, "NorthMarq requests the Court exclude evidence that Fidelity tendered payment for defense[] costs following the Court's Order on summary judgment." (ECF No. 217 at 7; *see also* ECF No. 217-8.) NorthMarq explains that, "[m]ore than a month after the Court issued its Order, Fidelity sent a check to NorthMarq in the amount of $945,146.94." (ECF No. 217 at 7.) NorthMarq argues that "[a]llowing Fidelity to introduce evidence of payment in defense of damages and bad faith is irrelevant where Fidelity continues to contest damages and bad faith." (ECF No. 217 at 8.)

"Courts in this District have . . . concluded that an insurer's post-litigation conduct *may be* relevant to an insured's common law bad faith claim." *Byron-Amen v. State Farm Mut. Auto. Ins. Co.,* 2022 WL 1567563, at *6 (D. Colo. May 18, 2022) (emphasis added). But here, Fidelity does not argue that its payment to NorthMarq is relevant to its *liability* for common law bad faith. Rather, Fidelity argues only that evidence of its payment is relevant to NorthMarq's damages model and Fidelity's "affirmative defense invoking 'setoff and/or recoupment.'" (ECF No. 237 at 4.) This argument is wholly unpersuasive. "In the event of a [jury] verdict for Plaintiff, *the Court* will entertain an appropriate *post-trial motion* from Defendant to offset any damages awarded by the jury by the amount of the payments Defendant has already made to Plaintiff." *Rooney v. State Farm Fire & Casualty Co.,* 2023 WL 3078332, at *2 (D. Colo. Apr. 25, 2023)

7

(emphases added).

While acknowledging that it is NorthMarq who carries the burden on its Motion, it is not the Court's role to act as Fidelity's advocate.  It thus declines to independently analyze whether there is any other potentially relevant basis for the introduction of Fidelity's post-SJ Order payment to NorthMarq where Fidelity has made no effort to do the same.  The Motion is accordingly granted as to the fourth issue.

D.     **Issue #5: Evidence or Argument that NorthMarq is a "Sophisticated" Party and/or that it was "Represented by Counsel"**

NorthMarq next asserts that "Fidelity intends to argue or offer evidence that NorthMarq is a 'sophisticated' lender represented by 'competent' or 'sophisticated' counsel, including through expert testimony."  (ECF No. 217 at 8.)  NorthMarq argues "[t]his evidence is irrelevant under Fed. R. Evid. 401 and 402" because "[t]he reasonable expectations doctrine turns on what an ordinary, objectively reasonable person would understand regarding coverage—not the insured's sophistication or reasonable representation."  (*Id.*)  Moreover, "[e]ven if marginally relevant," NorthMarq argues that "argument [it] is sophisticated should still be excluded under Rule 403" because "[s]uggesting NorthMarq's sophistication undermines the doctrine, risks confusing the jury, and unfairly prejudices NorthMarq's right to fair determination under the correct legal standard."  (*Id.* at 9.)

To be sure, the Court will not permit Fidelity or its experts to argue or insinuate that the reasonable expectations doctrine does not, as a matter of law, apply to sophisticated insureds or insureds represented by counsel.  The Colorado courts have adopted no such bright-line rule, and this Court will not interpose one where the Colorado Supreme Court thus far has not.  *Cf. Western World Ins. Co. v. Markel Am.*

8

*Ins. Co.,* 677 F.3d 1266, 1271 (10th Cir. 2012) ("it's at least conceivable Oklahoma might someday choose to create an exception to the reasonable expectations doctrine for cases where (arguably as here) both parties to the insurance contract are sophisticated . . . [b]ut no such exception yet exists").

That said, the Court is also not entirely persuaded that NorthMarq's status as a construction lender—as opposed to an ordinary layperson—is wholly irrelevant to the reasonable expectations doctrine. In *Bailey v. Lincoln General Insurance Company,* the Colorado Supreme Court articulated the standard applicable to the first and second applications of the reasonable expectations doctrine in slightly different—but presumably meaningful—terms. 255 P.3d 1039 (Colo. 2011). Specifically, the Colorado Supreme Court framed the first application of the doctrine in terms of the understanding of "an ordinary, objectively reasonable *person*," and the second application in terms of the expectations of an "ordinary, objectively reasonable *insured[]*." *Id.* at 1053 (emphases added).[2]

In the context of this case, the "ordinary, objectively reasonable insured" purchaser of a title insurance policy protecting the lien priority position of a construction loan is surely not, for instance, the same as an "ordinary, objectively reasonable insured" purchaser of an underinsured motorist policy. *See Curtis Park Grp., LLC v. Allied World Specialty Ins. Co.,* 124 F.4th 827, 834 (10th Cir. 2024) (discussing "the

---

[2] At least one recent Colorado case does suggest that the *first* application of the reasonable expectations doctrine may not apply to a sophisticated insured. *See Wright v. United States Servs. Auto. Ass'n,* 2025 WL 2416485, at *2 (Colo. App. Aug. 21, 2025) (noting the trial court found that, "[the plaintiff], as an accomplished commercial attorney, wasn't subject to an ordinary layperson standard under the first prong of the reasonable expectation standard," though that finding was not on review on appeal). But, that application of the reasonable expectations doctrine is no longer at issue in this case at any rate. (*See* ECF No. 264.)

9

reasonable expectations of the parties" in the context of "how an ordinary purchaser of builder's risk insurance would expect the Policy to operate").

For these reasons, the Motion is granted in part to the extent that Fidelity (and its experts) will be precluded from arguing or introducing evidence suggesting that the reasonable expectations doctrine is *inapplicable* to a sophisticated insured or an insured represented by counsel.  But the Motion is denied to the extent that the Court will not, at this time, preclude Fidelity from offering argument or evidence supporting what an ordinary, objectively reasonable construction lender would have expected under the circumstances.[3]

### E.   Issue #6: Mitigation Arguments Regarding the Petra Lien

Lastly, "NorthMarq requests exclusion of evidence or argument that NorthMarq failed to mitigate its damages by not asserting defenses to the Petra Lien, settling for too much, or failing to reduce its losses."  (ECF No. 217 at 9 (citing ECF No. 194-1 at 78).)  NorthMarq argues that, "[o]nce an insurer wrongfully denies coverage and refuses to defend, it forfeits the ability to second-guess the insured's litigation strategy or settlement decisions made in absence of a defense."  (ECF No. 217 at 9.)

NorthMarq cites recent authority in which the Colorado Supreme Court "acknowledged that where an insurer has acted unreasonably in defending its insured, the insured may take steps to protect itself, including by entering into an agreement with a third party."  *Auto-Owners Ins. Co. v. Bolt Factory Lofts Owners Ass'n Inc.,* 487 P.3d

---

[3] To be clear, the Court does not consider this issue fully resolved for the purposes of the standard the Court will apply to any Rule 50 motion asserted at trial or the standard on which the Court will instruct the jury.  Rather, it makes this evidentiary ruling for the limited purpose of the Motion presently before it.

276, 282 (Colo. 2021). However, this authority appears inapposite. The Colorado Supreme Court's discussion was in reference to an insurer's liability for bad faith, and there has not been any finding of bad faith against Fidelity to date.

Accordingly, the Motion is denied as to the sixth issue because NorthMarq has not carried its burden "of demonstrating . . . that the evidence at issue 'is inadmissible on any relevant ground.'" *Wheatridge Office,* 578 F. Supp. 3d at 1201 (citation omitted).

### III. CONCLUSION

For all the foregoing reasons, the Court ORDERS that NorthMarq's Motion *in Limine* (ECF No. 217) is GRANTED IN PART and DENIED IN PART, as more fully set forth above.

Dated this 20th day of October, 2025.

BY THE COURT:

_____
William J. Martinez
Senior United States District Judge